# CHARLESTON.

## BOSTER *v.* CHES. & OHIO R'Y CO.

Submitted January 20, 1892.—Decided March 26, 1892.

RAILROAD COMPANIES — EJECTION OF PASSENGER — DAMAGES— RULES.

Boster, the plaintiff, was accepted as a passenger by the railway company at a station on the road where no tickets were sold. On the train the conductor collected his fare—fifty cents—to Milton, the station, to which plaintiff wished to go. After passing Barboursville station the conductor again demanded of Boster his fare —thirty cents—from Barboursville to Milton. Boster claimed that he had paid the fare—fifty cents—to Milton. The conductor said he had not, but had paid twenty cents, the fare to Barboursville ; to which B. replied : "I won't argue the question with you. You ought to know your business." Then the conductor jerked the cord, and stopped the train. Then B., who had the money, said, "I will pay again, rather than be put off;" and offered to pay, making no tender ; but the conductor caught him in the back, and said : "I don't want you on here. You will have to get off." B. got off (no force or violence was used ; it was at no station) and walked nine miles up the track to Milton. In an action of trespass on the case in tort the jury found a verdict of five hundred dollars damages. *Held* :

I. The action of trespass on the case in tort was proper.

II. The damages are not so excessive as to warrant the belief that the jury must have been influenced by partiality, prejudice, or passion, or must have been misled by some mistaken view of the merits of the case.

III. Carriers may adopt such rules for the regulation of their business as may seem fit and proper, and they must be observed by the passenger, except so far as they may be opposed to law or be in themselves unreasonable.

*Simms & Enslow* for plaintiff in error cited 34 W. Va. 65; 29 O. St. 126; Woods R'y Law § 364; 20 Up. Can. Q. B. 27; Id. 24; 11 Lea 98; 45 Ia. 69; 50 Ia. 79; 45 Mich 184.

*E. M. McCallister* and *Gibson & Michie* for defendant in error cited 34 W. Va. 73; 33 W. Va. 423.

HOLT, JUDGE:

This is an action of trespass on the case, brought on the 27th day of June, 1889, in the Circuit Court of Cabell county, by plaintiff, Boster, against the railway company, charging it with having unlawfully ejected him from its train. There was a demurrer by defendant; overruled; plea of not guilty; trial by jury; a verdict for five hundred dollars; motion by defendant to set the same aside; motion overruled, and judgment given. On exceptions taken by defendant it has obtained this appeal.

The relation between the passenger and the common carrier is now generally treated as one of contract express or implied. But the contract is peculiar. The law creates and imposes on the common carrier the duty to carry the passenger safely and treat him properly; and by the weight of authority as well as by the behest of a sound public policy such carrier can not by any contract whatever relieve himself from the obligation of observing ordinary care. See Cooley, Torts, (2d Ed.) p. 825, and cases cited.

Although the carrier is not an insurer, ordinary care in transporting passengers by railway is a very high degree of care, where there must be no want of caution, foresight or judgment to prevent the injury. Not only is the contract

thus restricted as to what the carrier must do and what things he must not do, but he must make the contract. He can not refuse to make it. It is not left to his will or choice to receive and convey the passenger. His services of safe transportation are at the command of all well-behaved people who pay or tender the fare. So that, if it is to be called a contract throughout, it is certainly *sui generis*.

But, no matter whether we call it a duty created by law or a duty created by contract or by both, it is long and well settled, where common-law pleadings prevail, that the breach of such duty may be treated as a breach of contract and declared on in *assumpsit*, or may be treated as a tort and declared on in case, according as the pleader may see fit; because the liability is founded on the common-law as well as upon contract, or, rather, because the law casts upon the common carrier an obligation without regard to the contract, creating the implied contract and controlling the special one. 1 Chit. Pl. p. 151 (16th Amer. Ed.); *Goddard* v. *Railway Co.*, 57 Me. 202; Bish. Non-Cont. Law, § 74, and cases cited.

This case before us is plainly an action in case, in which the alleged breach of the carrier's common-law duty to properly treat the passenger and safely carry him to his destination is declared on as a tort. I can not discover that anything has been omitted from the declaration so essential to the action, that judgment according to law and the very right of the case could not be given; therefore the demurrer was properly overruled. Code c. 125, s. 29.

It avers that defendant is a corporation existing and doing business under the laws of and in this State, as a common-carrier of passengers by steam railway, *etc.;* that on the—— day of March, 1890, at the C. & O. shops, a station of the railway, plaintiff was received by defendant as a passenger on its train to be safely carried from said station to Milton, another station of defendant's railway; that plaintiff paid to defendant his fare from the one station to the other; that thereupon it became the duty of defendant to safely and securely carry and convey plaintiff from the said C. & O.

shops to the said Milton; yet defendant, not regarding its duty in that behalf, did not and would not safely carry plaintiff from C. & O. shops to Milton, but wrongfully, willfully, negligently and injuriously neglected and refused so to do, but on the day, *etc.*, at Cabell county wrongfully, willfully, negligently, injuriously, unlawfully and without just cause forcibly and violently ejected and expelled plaintiff from its train, one mile east of Barboursville, a station on defendant's railway between the two stations aforesaid, whereby plaintiff was compelled to walk a distance of nine miles to said Milton, and suffered great pain, and was in consequence afflicted with a severe case of piles, and was sick, sore and disabled for a long space of time, to wit, hitherto; whereby and by reason of the wrongs, injuries and grievances before mentioned plaintiff sustained damages to the amount of ten thousand dollars, and therefore he brings suit, *etc.*

During the progress of the trial plaintiff asked for no instructions; defendant asked for four, No. 1 and No. 2 were refused, and it excepted. No. 3 and No. 4 were given, and plaintiff excepted.

Defendant's instruction No. 1 (refused.)

"If the jury believe from the evidence that the plaintiff got off the train without any force or violence from the employe they should find for the defendant."

Defendant's instruction No. 2 (refused.)

"The court instructs that, if the jury finds from the evidence that the plaintiff paid his fare to defendant's conductor from the Huntington shops to Milton, and afterwards the defendant's conductor, on the same train, again demanded fare from Barboursville to Milton, and the plaintiff refused to pay fare again, and the conductor stopped the train, and told the plaintiff to get off, and without any force or violence the plaintiff got off himself, he can not recover in this case. It was his duty to pay the extra fare demanded, and then sue the company for a breach of its original contract."

Defendant's instruction No. 3 (given:)

"The court instructs the jury that, where a passenger has refused to pay his fare or show a ticket to the agent of a

41

common carrier when demanded, and the agent of the common carrier stops the train, and the passenger waits until the train is stopped before he offers to pay, it is too late to offer after the train has stopped, and the conductor has the right, after the train has stopped, to refuse to let the passenger remain on the train, although he may, after it is stopped, offer to pay the fare demanded."

Defendant's instruction No. 4 (given :)

"The court instructs the jury that, if they find from the evidence that the plaintiff had paid his fare from the shops to Milton, and that then the defendant refused to carry him, and required him to get off the train, and that he did get off without any violence or force being used, then the only damages the plaintiff can recover is that growing immediately out of the breach of the contract. Damages for sickness caused by bodily causes existing at the time are too remote and can not be considered."

The evidence in full is certified and set out. This is now required by act passed 12th March, 1891, taking effect at the expiration of ninety days after its passage. See Acts 1891, p. 304. But this trial was had before the act took effect, I do not mean however to imply that the act would affect the case.

The only serious conflict in the testimony is as to the amount of fare paid, plaintiff proving by his own testimony and that of his nephew, who was present as a passenger on the train, that plaintiff, when called on for his fare by the conductor, handed him a silver dollar, telling him that he got on at the C. & O. shops station and was going to Milton ; that the conductor handed back in change two twenty five cent pieces, retaining fifty cents, conceded to be the proper fare to Milton. The conductor on the contrary states with equal positiveness that plaintiff handed him two ten cent pieces, the proper fare to Barboursville. The conductor is supported by the evidence of another passenger, who says plaintiff paid but twenty cents, and he heard plaintiff say to some one he was going to Milton on that fare. Plaintiff did not contradict saying this, though afterwards examined.

Whatever the truth may really be in this conflict of tes-

timony it is not our province to determine; but we must take the fact to be, for the present purpose, as the jury have found it; for it was theirs to determine the weight of testimony and the credibility of the witnesses, and they have found that plaintiff had paid his fare to Milton, and was wrongfully ejected.

Tickets were not sold at the C. & O. shops, called the "Roundhouse Station," where plaintiff got on, and therefore he had no ticket; and he was not given on the train what is called a "duplex ticket." They are not used on that train, called the "accommodation train." After the train had passed Barboursville, plaintiff was sitting in the front car reading, when the conductor passing round took him by the shoulder and shook him. "I asked the conductor what he wanted, and he says : 'I want your fare. You only gave me twenty cents.' I says, 'I paid you fifty cents.' He says, 'You are mistaken.' 'I won't argue the question with you. You ought to know your business.' He (the conductor) appeared to be mad, jerked the cord, and stopped the train. Then I told him that I would pay again, rather than be put off, and he says : 'I don't want you on here. You will have to get off.' I went back to the back part of the coach, got my coat, and got off. I had one hundred dollars in my pocket, including some silver, I put my hand in my pocket to pay the thirty cents fare from Barboursville to Milton just after he jerked the cord, and he replied, 'I don't want you on here, and you have to get off,' or something to that amount."

Reuben Boster, plaintiff's nephew, together with eight or ten other passengers, had gotten off at Barboursville. The conductor did not know plaintiff. Here again the conductor's account differs from that of plaintiff. The conductor says that as plaintiff was getting down off the platform he said : "I would rather pay than be put off. I believe I will pay you now." The conductor replied, "You had better get down."

This was about nine miles from Milton. Plaintiff turned his face homeward, walked up the track to Milton, and thence to his home, a further distance of ——— miles. He was in bad health, and weak, suffering with "lung trouble"

and chronic piles since 1864. The inconvenience of the walk and worry and fatigue brought on a severe case of the piles, protracted, as well as very painful.

We have already stated that the jury came to the conclusion that plaintiff had paid his fare to Milton, and was wrongfully expelled or ejected from the train. It was right to give him some damages, but how much? Thirty cents would have made him whole for the money paid out for which he received nothing. The court would have told them, if asked, that, after considering the case carefully, fairly and dispassionately, according to all the facts, they could in fixing the damages, if they allowed any, take into consideration what would be a proper compensation for mental and physical pain, insult and humiliation, if any, in addition to the thirty cents. Damages for sickness caused by bodily causes existing at the time, it is fair to presume, were not considered in obedience to instruction No. 4.

The jury fixed the damages at five hundred dollars. "The judgment of the jury as to the amount of the damages must govern in such cases of indeterminate damages, unless the damages allowed are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or misled by some mistaken view of the merits of the case." See *Furish* v. *Reigle*, 11 Gratt. 697.

There is nothing to indicate partiality or prejudice. Were they misled by some mistaken view of the facts? If plaintiff, when ordered to get off, had made no offer to pay, but had resisted and compelled the conductor and his associates to lay hands on him and put him off by main force, the case might have been different; but no such scene took place. When the one in authority ordered him to go, he obeyed.

We are referred by counsel of the railway company to the case of *Hall* v. *Railroad Co.*, 15 Fed. Rep. 57 (1882) in which the following doctrine is laid down: "While resistance to the authority of a conductor does not preclude a passenger from recovering reasonable damages for a wrongful ejection from the train, it is his duty certainly, where he is in the wrong, to submit without resistance, except in de-

fence against impending bodily injury; and, right or wrong, unnecessary resistance will excuse the use of force and mitigate the damages for any injury received." * * "A contract of carriage is made with reference to the reasonable regulations of the carrier for the inter-communication between the agents of the carrier in the transaction of its business; and mistakes should be treated, as in other business transactions, as matters for adjustment between the passenger and the proper agents of the carrier. Held, therefore, that where there is a dispute arising on the train about the ticket it is the duty of the passenger, if able to do so, to pay the extra fare, and rely on his remedy to recover it back, rather than to force the conductor to expel him, with a view to suing for damages for a wrongful ejection. And, if he insists on expulsion, he can recover no other damages than he could have recovered if he had paid the extra fare, or quietly left the train, and sued for a breach of the contract."

The above are the head notes. See opinion and also notes of reporter. In that case, the plaintiff had no proper ticket, and insisted on putting the conductor to the pain, as well as the trouble, of ejecting him by force. The learned judge, in his opinion, says: "It is not the case of a man with a clear right and a clean ticket entitled to ride on that trip and train wrongfully ejected."

That case needs no comment. Some of the positions and reasonings seem sound and sensible. For example, I do not see why a man should have increased damages for resisting or being expelled by force; or why it should be any the less an expulsion or decrease the damages, if, when ordered off the train by the conductor, he should obey.

In the case before us, the plaintiff did have a clear right and the equivalent of a clean ticket to ride on that train to Milton, near his home; and he was certainly ejected wrongfully within the remedial power of an action of trespass on the case, and as averred in the declaration. If he had made no offer to pay the extra fare wrongfully demanded, I should be inclined to hold the damages excessive, and we are not to suppose that the jury, in that state of facts, would have put the damages at so high a figure. But we are to take

it that he did offer to pay once certainly, sitting in his seat, between the pulling of the bell cord to stop, and the reply of the conductor refusing the offer, and directing him to get off the train; and, it may be, a second time, as he descended from the platform. What more could he do? Knowing that he had paid his fare to Milton, his home station, where he was going, and where he went, what is more natural than to try to convince the conductor of that fact, or to recall it to his memory, but failing he yielded the point, the conductor pulled the cord, plaintiff offered to pay, was refused and ordered peremptorily to leave the train. How easy it would have been for the conductor to put out his hand, take the thirty cents, pull the cord, and, start the train.

If this be the true state of the facts, and as the case stands before us we are to so regard it, he either plainly misconceived the rule of the company, if they have one on the subject, or the rule is against the common law of carriers. "Carriers are permitted to adopt rules for the regulation of their business; and, so far as these are not opposed to law, or unreasonable in themselves, the passenger must observe them." Cooley, Torts, 774. But it is their duty, under such peculiar circumstances, to receive the fare demanded, and transport the passenger. We are not to suppose that there is any rule requiring the expulsion of a passenger, who has in fact paid his fare or shown his ticket; and as to putting a passenger off, who offers to pay after the train has been stopped, it is plain to see that this case is not within the meaning of any such rule.

In truth in both phases of the case the act of the conductor was a plain act of oppression; and so the jury viewed it, no doubt, in ascertaining, as best they could, the indeterminate damages to be allowed plaintiff as compensation for the wrong done and injury suffered.

The refusal of instructions No. 1, and No. 2 is assigned as error in defendant's petition, but is not mentioned in their brief. The instructions seem to be based on the idea that this action—trespass on the case—in tort will not lie unless force or violence is used in expelling or ejecting plaintiff.

*McKey* v. *Railroad Co.*, 34 W. Va. 65 (11 S. E. Rep. 737) does not lay down such doctrine. There, the passenger failed to produce a ticket, and when his fare was demanded failed or refused to pay it. Held, he was rightfully ejected; and, as no unnecessary force was used (none in fact) he had, of course, no cause of action for the use of unnecessary force in performing a lawful act. It seems a ticket was given the passenger, but one for a trip in an opposite direction, very apparently not good. The court held that the action for the mistake of the company, if any, must be an action *ex contractu*, based on the breach of the contract to convey the passenger. There the action was in form for tort, and was not supported by plaintiff's evidence.

No such question is involved here. This question has been already discussed, showing that the form of action at common-law against the common carrier may be in tort on the custom of the realm—that is, as we say, for breach of the common-law duty—or *ex contractu*, for breach of the contract to carry. See further, a very interesting discussion of the subject in Pol. Torts, 434, c. 13, and cases cited: especially *Brown* v. *Boorman* (1844) 11 Clark & F. 1.

As to instruction No. 3, given by the court at the instance of defendant, it has not been discussed by counsel, and in regard to it it is enough to say that, while the ascertainment of the facts was still before the jury, the court might have regarded that there was some evidence tending to show that plaintiff had paid to Barboursville only; that he refused to pay the fare to Milton, and thereby became a trespasser; yet, no complaint of the instruction having been made here, we give no opinion as to its soundness. There are many cases on the subject. Some states have statutes; and at common-law complete immunity depends on the place, as well as the manner, of expulsion, and other circumstances, some of which existed in this case —as that the defendant had not furnished the ordinary means of determining the question; and in a case so exceptional it is not deemed proper to pass now upon so important a question.

Instruction No. 4 has not been discussed or complained of. If it means, that case proper can not be maintained, un-

less it appear that defendant has used some violence or force in putting plaintiff off the train, then the instruction was wrong, for the reasons already given. Plaintiff wanted to go home, near Milton. He paid the company its fare to carry him to his home station. He was not contracting for a pecuniary benefit, so that it will not do to say that he would have been fully compensated by the return of the thirty cents; and that the railway company can, at their will and pleasure, on any "fine spring morning," set him down by the wayside, with the prospect before him of "enjoying" a nice walk of nine miles up the track to his home station, which the fare paid called for, with the right of having refunded the thirty cents and interest. Yet we are told on behalf of defendant that his damages must be limited to that.

It was a breach of contract. The thing bargained for was not delivered, and plaintiff must have his money back with interest. And when he offered to pay the thirty cents more, demanded, his recovery must still be limited to the thirty cents, because they refused to take the last thirty cents, and put him off, so that by reason thereof it came to be that they had but thirty cents of plaintiff's money. "But it was an innocent mistake, the fault of his recollection." True, the memory of the conductor was at fault. We may call it a mistake of mental action; but there was no mistake in the physicial action, which was the matter of moment to plaintiff.

Plaintiff contends that he has no money to lend on those terms; that he did not contract for or contemplate the return of any pecuniary benefit; and that such pecuniary standard alone can not be taken to measure his damages; but that he should receive a reasonable and fair compensation for his physicial discomfort and inconvenience, his mental suffering and pain, the insult and humiliation; all following as the direct proximate result of having been driven from the train wrongfully, and after he had offered to pay the second time.

The answer to this by the defendant in effect and taken at its uttermost is—the extra fare of thirty cents was wrongfully demanded; the train was stopped for a wrong-

ful purpose; yet because plaintiff offered to pay the thirty cents wrongfully demanded, after the train was wrongfully stopped, therefore his offer to pay came too late; he thereby became a trespasser; the company is not bound again to accept him as a passenger; he must get off and walk, and sue *ex contractu* for the return of the thirty cents. That would be setting up one wrong to justify or mitigate the other.

The conclusion is that in this one transaction the carrier violated two plain duties imposed by the common-law, independent of contract—the one, to treat a passenger properly, and carry him safely to his designation; the other, to receive him as a passenger, after he had offered to pay the fare illegally demanded. In such a case we can not say that the damages found by the jury are so excessive as to warrant the belief that the jury must have been influenced by partiality, prejudice, or passion, or have been misled by some mistaken view of the merits of the case.

The judgment complained of is affirmed.

AFFIRMED.