# CHARLESTON.

## TRICE *v.* CHESAPEAKE & O. RY. CO.

Submitted January 15, 1895—Decided March 27, 1895.

1. RAILWAY TICKET—EJECTION OF PASSENGER—DAMAGES.

By mistake a ticket agent selling a mileage ticket good for one year stamps upon it, as the date of issue, 4th March, 1892, instead of 1893. The passenger tenders it on 24th April, 1893, in payment of fare, but it is refused, and he is ejected for non-payment of fare. The passenger can recover damages.

2. RAILWAY TICKET—EJECTION OF PASSENGER—DAMAGES.

By mistake a ticket agent selling a mileage ticket good for one year from issue stamps upon it, as the date of issue, 4th March, 1892, instead of 1893, and after the figures 189— writes the figure 3, making the date of the expiration of the book 4th March, 1893, and then corrects the latter mistake by writing over the 3 the fig-ure 4, making it read 1894, not correcting the 1892. On 24th April 1893, the holder tenders this book in payment of fare, but it is re-jected as out of date, and he is ejected from the train, after ex-plaining to the collector that the agent had made the mistake, and he had himself not altered the ticket, and asking that the collector ·wait until the train reached Huntington, where the book was sold, so that the collector would be satisfied that the book had not been fraudulently altered; and the collector made no inquiry at any of ·several telegraph stations of the railroad company as to it. The ·passenger can recover damages of the company.

3. DAMAGES—VERDICT OF JURY

Where the case is one of indeterminate damages, and the law gives no specific rule of compensation, the decision of the jury upon the amount of damages is generally conclusive, unless the amount is so large or small as to induce the belief that the jury was influenced by passion, partiality, corruption, or prejudice, or misled by some mistaken view of the case; but, if so excessive as to induce such belief, it will be set aside.

SIMMS & ENSLOW for plaintiff in error, cited 34 W. Va. 65; Hutch. Car. (2d Ed) § 580, p. 675; Id. § 380*l*; 20 U. C. Q. B. 24, 27; 11 Lea (Tenn.) 98; 45 Iowa 69; 50 Iowa 79; 49 Mich. 184; 36 W. Va. 318.

E. W. WILSON for defendant in error, cited 36 W. Va. 318, and 39 W. Va. 475.

BRANNON, JUDGE:

Trice sued the Chesapeake and Ohio Railway Company, in Cabell county, for damages for his ejectment from a train, and, on demurrer to evidence, recovered judgment for five hundred and fifty dollars, and the defendant brought the case here.

The facts, in short, are as follows: Trice boarded a passenger train on the 24th of April, 1893, at Charleston, to go to Huntington. He had a mileage ticket issued for one thousand miles, having remaining unused coupons for forty miles' travel. These tickets are good for one year from issue. This one had stamped upon it as date of its issue March 4, 1892. For date of expiration there were printed on it the figures 189—, to be filled out with the particular year of issue; and there was inserted in ink, with the pen, the figure three, making the date of expiration 4th March, 1893; but over the three was written with pen and ink the figure 4, making the expiration considering the figure 4 as the right one, and disregarding the figure 3, 4th March, 1894. The question is, when was this ticket issued? When fare was demanded, Trice gave the collector his mileage ticket as paying forty miles' fare, and fifty cents in money, which the collector accepted, and passed on, saying that there was some change coming to Trice, which he would hand him.

The collector soon returned, saying to Trice that his ticket was not good, because out of date. When the dates on the ticket were called to his attention, Trice insisted that the ticket was good; that he had purchased it at the Huntington office 4th March, 1893, and that the stamp of 1892 as the date of purchase was a mistake in the agent who sold it to him; that even though the stamp gave the date of 1892 for its purchase, still the date of expiration on the ticket was 1894. Whereupon the collector said: "That won't help you any. That four has been made there since you bought the ticket. You have changed that three to a four. I won't accept it." Trice still insisted upon the correctness and validity of the ticket, and said, if there was any mistake, it could be rectified at Huntington, and the collector would there find out that it was genuine and correct, to which the collector replied that he did not have to go to Huntington to ascertain about it, and that he would have to put Trice off, and told him to get off at next stop. Trice did not get off at the next stop, Spring Hill; and, after the train left Spring Hill, the collector said to Trice that he would have to pay fare or get off the train, and handed him back the mileage book and fifty cents. Then the conductor came to him, inspected the book, said the collector was right in rejecting it, and Trice would have to get off at St. Albans, which he did under protest, still demanding right of passage.

Was the mileage ticket still good for forty miles' travel? That depends on whether it was issued in 1892 or 1893, and this depends on whether the stamp date, 4th March, 1892, was a mistake as to the year, or was right, and the figure 4, written over the figure 3 in its date of expiration, was wrongfully put there by forgery. Trice swears he purchased the ticket 4th March, 1893, and that he did not put the figure 4 in the date of expiration, but that the agent at Huntington did. There is no evidence to the contrary; and, even if we were not deciding the case on a demurrer to evidence, we would be required to say that the facts are as Trice states them; but the more certainly and plainly that is our duty under principles governing us upon a demurrer to evidence. Where is the registry kept at the Huntington office, if any

was kept, showing sales of mileage books by date and number? Where the agent who sold this book? They are absent, and their absence unaccounted for. No alteration in the ticket is shown. We must consequently say that the stamped date of issue is a mistake of the selling agent, as also the date of 1893 for expiration a mistake, and that he discovered it, and corrected it by writing the figure 4 over the figure 3 in date of expiration, and omitted to change the 1892 in date of issuance. It does seem strange that the selling agent would retain as late as 4th March, 1893, the old stamp of 1892, and still more that he would put 1893 in date of expiration if the book was issued in 1893, making two mistakes. Did this happen only in the case of this ticket? How did it happen? We do not know. But the evidence shows mistaken date of issuance. The collector could not say that the date 1892 in date of issue was infallibly right, and that the date 1894 in date of expiration was wrong, unless the latter was forgery. Indeed, the fact that the figure 4 was written in ink over the figure 3 would indicate that 1892 was erroneous and 1894 right, unless forged, and the ink of the figures 3 and 4 and in other parts seem the same, and the 4 in day of month made like the 4 in the year 1894. Thus, the passenger had a lawful ticket, and was wrongfully ejected. There is nothing forbidding oral evidence to show mistake in date. The mileage book is a contract, but, under the rule that error in mere date may be shown, I take it the true date can be shown. The defense is only that the collector acted under a rule of the company directed to collectors, saying that "a ticket bearing any evidence of alteration or erasure should not be accepted for passage, unless collectors are satisfied that the same has been done in ignorance and contrary to instructions by agent who sold the ticket." That is good between company and collectors; but can it destroy the right of a passenger under a ticket which in fact has not been mutilated or changed? Suppose the collector should find marks of mutilation or alteration when a court should find none. Would the rights of a party be defeated in a court by the decision of the collector? The rule is prudent; but if an instance of its ap-

plication is one of misapplication or error, and thereby one guilty of no fault is injured, the company, like others, must answer for the consequence of its action or the mistakes of its agents, though well meant. This ticket was apparently good, or at least, as apparently good as apparently bad; more apparently good than bad.

In the *McKay Case*, 34 W. Va. 65 (11 S. E. Rep. 737) we held that where a railroad company agreed to sell a ticket for passage between certain points, but by mistake wrote the ticket for passage to other points, the passenger could not ask passage where the ticket did not carry him, it being apparently not good for the passage demanded; and the passenger leaving the car, at the command of the conductor, but without force, could not sue in tort, but must sue for breach of contract by the company in agreeing to carry him that passage, and failing therein by not giving him the ticket contracted for. That case was confessedly somewhat close, but I still think it was rightly decided, and sustained by cases of eminent authority. There the ticket showed nothing for, and all against, the right of the passenger to ride, which he claimed, and was transparently not good—a mere blank or nullity as to the ride claimed; while here it is apparently good, more apparently good than bad, and turning out in the end to be good. There is a difference, though it cost reflection to see it. In this case I go upon the theory, which I think is correct, that the plaintiff's grievance is not a breach of contract in agreeing to sell him a ticket for a certain passage, and giving him a wrong ticket, as in the *McCay Case*, but in the fact that he had a ticket entitling him to go to Huntington as he demanded, and in its wrongful rejection and his expulsion. He had a ticket turning out ultimately to have been good from the start. The confusion as to date arising from the agent's error, without fault in the passenger, does not change its validity. In *Railroad Co. v. Rice*, 64 Md. 63 (21 Atl. 97), a party had a ticket for a round trip containing two coupons, one each way; and the conductor tore off the wrong one, and left the other one with the passenger for return, and the conductor on the return ejected him, and he recovered. He

had bought a ticket good on its face, and the mistake of the conductor could not change it. His rights depended on his ticket good from the first as issued, not on the conductor's error. So in *Railroad Co.* v. *Fix*, 88 Ind. 381, where conductor tore off wrong coupon in round-trip ticket. This passenger, Trice, made explanation as to the ticket to the collector, and, what showed his good faith, asked the collector to wait until they got to Huntington, where any mistake could be corrected. This was a reasonable proposition no doubt. In *Hufford* v. *Railroad Co.* (Mich.) 31 N. W. 544, it was held that where an agent had made a mistake in selling a ticket, the conductor ought to rely on the passenger's statement as true, until found to be untrue, without regard to words, figures or other marks on the ticket, and the company was held liable for ejection. And then this was a train stopping at all stations, nearly a dozen, between Charleston and Huntington, and many of them telegraph stations, so that the collector could have ascertained about the ticket by inquiry of the Huntington office without cost. He took no steps to ascertain the truth, but assumed a forgery on Trice's part.

Is the amount of damages found excessive? While, from the first I have had no doubt of the plaintiff's right to recover, my inclination was to think that the jury had imposed too heavy a hand on the company, and compensated Trice beyond any harm or loss he suffered. Not a finger was laid upon him to force him from the train, but he got off of his own action, under protest. It does not appear that he suffered from weather. He got off at a regular station. It is not shown that he was greatly delayed, or lost anything thereby. He says he had important business in Huntington, but what, or whether he lost anything, he does not say. There is no evidence that he was exposed to public humiliation, or that what was said was heard by other passengers. The appearance of the ticket might well suggest a doubt to the conductor. Where a passenger is wrongfully ejected from a train by a conductor for non-payment of fare, in good faith, in execution of the rules of the company, as he supposes, without malicious intent or circumstances of indignity

or insult, without force, there ought not to be heavy or exemplary damages, but only such as compensate actual loss. *Railroad Co. v. Guinan,* 47 Am. Rep. 279; *Fitzgerald* v. *Railroad Co.,* 50 Iowa 79; *Car Co.* v. *Reed,* 75 Ill. 125.

But here the collector charged upon Trice the crime of forgery, and, where circumstances of insult and indignity attend, that fact may be considered fairly by a jury in estimating damages. In *Railroad Co.* v. *Fix, supra,* where the verdict was six hundred dollars, a distinguishing feature was the conductor's charge that plaintiff wanted to cheat the company. This is a matter considered everywhere. But as is said in 3 Suth. Dam. § 953: "In actions for personal injuries, and in cases generally where there is no fixed legal rule of compensation, the theory of the law is that the decision of the jury is conclusive, unless they have been misled, or their verdict has been influenced by corruption, passion, or prejudice. Unless the verdict finds an amount so out of proportion to the actual injury as to evince such misleading, or the presence of some malign influence, it will be sustained, although it may materially differ from the judgment of the court. But if the amount of the verdict so far exceeds or falls short of what to the court appears to be just compensation as to induce the belief that the jury have not given the case a fair and dispassionate consideration, it will be set aside." Our own authorities are the same, and in such cases hold that the finding of the jury governs, unless so excessive as to induce the belief that it was governed by partiality, corruption or prejudice, or misled by some mistaken view of the merits of the case. *Farish & Co.* v. *Reigle,* 11 Gratt. 697; *Pegram* v. *Stortz,* 31 W. Va. 220 (6 S. E. Rep. 485); *Boster* v. *Railway,* 36 W. Va. 318 (15 S. E. Rep. 158); *Sheets* v. *Railroad Co.,* 39 W. Va. 475 (20 S. E. Rep. 566). Under these principles, we can not interfere with the amount found. In a note to *Railroad Co.* v. *Guinan,* 13 Am. & Eng. R. Cas. 41, are collected cases in which verdicts have been held excessive for ejection of passengers and others where large verdicts have been sustained, but they afford no general guide. Certainly, where the conductor is honestly executing his duty, though he is mistaken, and there is no force,

insult, or harsh treatment, the finding ought to be only compensatory, not punitive and heavy.

We think this verdict heavy, but we hesitate to interfere with the finding of the jury. Affirmed.