# CHARLESTON.

## McCreery's Adm'x v. Ohio River R. Co.

Submitted January 21, 1897—Decided March 17, 1897.

Instructions—*Injury to Employe—Contributory Negligence—Error.*

When contributory negligence is relied on in defense of an action for wrongful injury or death, a hypothetical instruction directing a finding in favor of plaintiff, which omits any reference to the facts tending to establish contributory negligence, and entirely ignores such defense, is erroneous. Nor can such error be cured by other instructions given in behalf of either party. (p. 116.)

Error to Circuit Court, Cabell county.

Action by James McCreery's administratrix against the Ohio River Railroad Company. Judgment for four thousand and two hundred dollars for plaintiff, and defendant brings error.

*Reversed.*

H. P. Camden and Vinson & Thompson for plaintiff in error.

Simms & Enslow for defendant in error.

Dent, Judge :

The facts are as follows :   The plaintiff's intestate, James C. McCreery, for about two years prior to April, 1893, when the accident complained of in the declaration in this case occurred, had been in the employment of the Huntington & Big Sandy Railroad Company as passenger conductor.   A short time prior to the accident which resulted in his death, the Ohio River Railroad Company leased the property and franchises of the Huntington & Big Sandy Railroad Company, and continued the said McCreery in his appointment as passenger conductor on what was known as the "Dummy train," which ran between Guyandotte and Kenova.   Between the two points above mentioned there is a bridge across Twelve Pole river.   Some fifty or sixty feet north of this bridge there had been erected, by the contractors who constructed the bridge, a derrick, which had been used by them in raising stone during the construction of the abutments of the bridge.   This derrick was not on the land of the defendant.   The work on the bridge had been completed several months before the happening of the accident, and the derrick had been dismantled.   On the evening before the accident occurred the derrick had been set up again and used by some one in loading some stone on cars belonging to the defendant. Half an hour before the wreck occurred, the section foreman of the petitioner passed by the derrick, and, seeing the rope attached thereto loose, had it fastened back.   The train known as the "Dummy train" consists of a small engine and car, very similar to a street car, upon which McCreery had been conductor ever since the opening of the Huntington & Big Sandy Railroad.   This car made at least seven round trips each day between Huntington and Kenova, passing the point of accident at least fourteen times each day.   The rules of the company required that when McCreery was not engaged in collecting fares, he was to station himself in a conspicuous place on the rear of the train (if it should be running backwards), so as to

keep a constant lookout and avoid accidents. McCreery had control of this train, and could direct whether it should be run with the car in front or the engine in front. He had, however, been directed, whenever it was possible to do so, to run the train with the engine in front. The morning of the accident McCreery was running the train with the car in front. It was raining, and McCreery was inside the car. Upon the point as to whether he was keeping a lookout or not, the evidence is conflicting. This derrick which caused the accident, and the chain or rope attached thereto, might have been seen by one standing on the front of the car from a point six or seven hundred feet north of the point of the accident in favorable weather. The accident happened as follows: The boom of the derrick swung around over the railroad track, and the hook depending therefrom caught the drawbar of the front car, jerked it from the track, and threw it down an embankment about twenty-five feet in height, smashing the car to pieces, and killing the conductor. One of the nonassignable duties of a railroad company towards its employes is that of providing a reasonably safe place in which to work; in short, to keep its track clear of unnecessary obstructions. *Flannegan* v. *Railway Co.*, 40 W. Va. 436 (21 S. E. 1028); *Robinson* v. *Railroad Co.*, 40 W. Va. 583 (21 S. E. 727). And the mere fact that the boom of this derrick was permitted to swing across the tracks, forming as it did a most deadly and unnecessary obstruction, furnishes ample grounds to sustain the inference of negligence, notwithstanding the evidence that the proper employe of the company had attempted to firmly secure the boom but a short time previous. The derrick was not an obstruction itself, for it was not even dangerous. But the negligence consisted in the insecurity of the boom, which could have been so easily avoided, either by dismantling it, or fastening it back in such condition that it could not have been swung loose by the force of the wind. It is true, it might have been loosened by some person, but such is not a probable inference, so far as the evidence discloses, which, however, was a question for the jury.

The only defense is contributory negligence, the defendant insisting that the accident could have been averted had the intestate properly discharged his duties. *Ward's*

*Adm'r* v. *Railway Co.*, 30 W. Va. 49, (19 S. E. 389). The intestate was acting in the capacity of both conductor and flagman on the train, and receiving pay accordingly. His duty as flagman was, when the train was running backward under his directions, to keep a lookout when not otherwise engaged, in front of the train, so as to notify the engineer of obstructions, and prevent accidents therefrom, not only for his own, but for the safety of others, and the property of the company. If this accident could have been avoided by the proper discharge on his part of this duty, then he ought not to recover, for the liabilities imposed on the company by the destruction of its property and damages occasioned to innocent passengers are already sufficient in amount, without adding thereto the life of the employe whose negligence is primarily responsible for the accident. To avoid accidents was one of the duties of his employment, and his failure to discharge such duty ought not to inure to the emolument of his beneficiaries, to the detriment of his employer. The evidence on this question is contradictory. It therefore becomes a mixed question of law and fact for the determination of the jury under instruction as to the law by the court.

At the instance of the plaintiff, the court gave the jury six instructions, to each of which the defendant objected. For obvious reasons they will be considered in their inverse order. The sixth instruction is as follows: "The court instructs the jury that it was the duty of the defendant in this case to keep its roadbed and track in a reasonably safe condition for the passage of its train along and over the same, and to keep the same clear of obstructions thereon, or in close and dangerous proximity thereto; and if the jury believe, from the evidence in this case, that there was standing near the plaintiff's railroad and track at the point where it is alleged in the declaration that the accident herein occurred, a derrick, with an arm or boom attached thereto, and that said arm or boom of said derrick was of sufficient length to swing over the roadbed or track of the defendant, and thereby endanger the passage of trains along and over said track at said point, then it was the duty of the defendant to either cause said derrick and arm or boom attached thereto to be removed, or to see that the same was kept securely fastened in such a way and

manner as not to obstruct the passage of trains along said track at said point. And that this duty be devolved upon the defendant, although said derrick may not have been upon the right of way of defendant, nor upon lands under its immediate control." The only objection urged to this instruction is the right of this company to keep a swinging boom or derrick in proximity to its track. This right is not denied by the instruction, but it simply imposes on the company the duty of keeping such swinging boom so fastened as to prevent it obstructing the track, which, of course, is right.

The fifth instruction is as follows: "The court instructs the jury that where the defense is contributory negligence on the part of the plaintiff's decedent, the burden of proving contributory negligence is on the defendant, and, to sustain it, it must have a preponderance of the evidence; i. e. it must appear from all the evidence in the case." No objection is urged against it, and apparently there is none.

The fourth instruction is as follows: "The court instructs the jury that if they find from the evidence that James O. McCreery, at the time of the accident, was standing either in the door of the front car as it was moving, or looking through the glass in the door, and that he could see ahead of the train as well as if he had been on the outside, that would be a sufficient compliance with the rule requiring him to take a conspicuous place on the front of the car." The objection to this instruction is that there was no evidence that intestate "was standing either in the door of the front car, or looking through the glass in the door." The evidence of the witness Ferguson is that the conductor was standing at the door in the west end of the car, where his duty would require him to be to keep a lookout; hence the presumption is that he was there for that purpose, and discharging his duty, in the absence of evidence to the contrary. At least this evidence tends to prove the matter of the instruction, and it was, therefore, proper for the consideration of the jury.

The third instruction is as follows: "The court instructs the jury that an employe running on the trains of the defendant has the right to presume that the roadbed is in a reasonably safe condition for the passage of its trains,

and that the mere fact that a derrick is standing by the roadside is not notice that it is dangerous, unless the employe, McCreery, in the case, had seen it upon the track, or knew it was in the habit of swinging across the track, and after such knowledge continued to run defendant's train without complaint." The objection to this instruction is as follows: "Instruction No. 3 is bad because it interprets the evidence of the jury, and tells them from what facts they may or may not infer knowledge on the part of the decedent of the danger. If the derrick or boom was swinging loose parallel to the track for some time, and the decedent saw it in that position, the jury had a right to say that was sufficient notice to him that it might swing across the track in a wind storm, whether he had ever seen it across the track or not." The objection and instruction so thoroughly correspond that it is hard to distinguish between the two in the light of the evidence. It is therefore untenable. The objector evidently does not distinguish between the standing derrick and the swinging boom that may or may not be attached thereto. The derrick itself would be no obstruction, nor would the boom, if properly secured. The negligence relates to the insecure boom, and there is no evidence that it had been swinging loose for some time. On the contrary, it is shown to have been dismantled.

The second instruction is as follows: "The court instructs the jury that, although the employe, McCreery, did in fact know of the existence of the derrick in question, and its situation with reference to the roadbed and track, yet the said McCreery had the right to presume that the defendant would keep said derrick so secured as to make it reasonably safe, or cause the same to be removed after the completion of the bridge; and it was not such negligence on the part of said McCreery to remain in the employment of said defendant as would defeat a right of recovery in this case." The same objection is urged to this instruction as to the third, and is equally untenable. The company had the right to have the derrick there, but they should have kept the boom secure, so as to prevent it becoming a dangerous nuisance to its employes using its track, and this whether owned by itself or its independent contractor doing its work; and the conductor had the right

to presume the company would do its duty in this respect. It was not one of the ordinary risks of his employment.

The first instruction is as follows: "The court instructs the jury that it is the duty of a railroad company to keep its roadbed in a reasonably safe condition, so its employes on its train may not be endangered in the discharge of their duties; and if the jury find from the evidence that the defendant allowed and permitted a derrick to stand on, or so near its right of way and roadbed, and so loosely fastened and tied that it was liable to be blown or to be swung around across the defendant's track, and thereby endanger the passage of trains and the life and limbs of employes thereon, and that said derrick did actually blow around or swing across the track, and cause the injury complained of, then you should find for the plaintiff, and assess her damages such as may seem fair and just, not exceeding $10,000." This instruction clearly violates the rule laid down in the case of *Woodell* v. *Improvement Co.*, 38 W. Va. 23 (17 S. E. 386). The third syllabus is as follows: "When the court instructs the jury that, if they believe from the evidence certain hypothetical facts mentioned in the instruction, they must find for the party plaintiff or defendant, as the case may be, but omits from such statement of facts a material fact, which, being believed from the evidence, would require a different verdict, such instruction is erroneous, and, if excepted to, and not cured, is ground for reversal." This present instruction entirely omits any reference to the facts bearing on the intestate's alleged contributory negligence, and which, if established to the satisfaction of the jury, were sufficient to defeat the action.

C. E. Bryan testified that at the time he first noticed the boom across the track—which was about three hundred feet from it, and too late to stop the train at the speed it was going—the conductor was sitting at the end of the car nearest the engine, with a newspaper in his hand. If this were true, he was not at his post of duty, nor keeping a proper lookout ahead, and the jury could very well infer therefrom that, had he been discharging his duty, the accident would not have happened. But the instruction entirely ignores this fact, and, even standing by itself, takes away from the jury the question of contributory negligence, and directs

them, if they believe the defendant was negligent, as alleged, that they must find for the plaintiff. Nor could this defect be remedied by other instructions in behalf of plaintiff or defendant, as they would only tend to contradiction and confusion, and thus mislead the jury. *McKelvey* v. *Railroad Co.*, 35 W. Va. 500 (15 S. E. 261); *McMechen* v. *McMechen*, 17 W. Va 683; *Mason* v. *Bridge Co.*, 20 W. Va. 223; *Railroad Co.* v. *Sanger*, 15 Gratt. 230; *Hall* v. *Lyons*, 29 W. Va. 420, (1. S. E. 582). This instruction, having been given over the objection of the defendant, and being plainly erroneous, according to the former holdings of this Court, the judgment must be reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed.*