# CHARLESTON.

SCOTT *v.* CHESAPEAKE & O. R. Co.

Submitted January 20, 1897—Decided April 24, 1897.

REVIEW ON APPEAL—*Weight of Evidence.*

    The weight of the evidence is for the jury, and, unless it plainly preponderates against the verdict, it will not be disturbed. (p. 487.)

Error to Circuit Court, Kanawha county.

Action by George W. Scott against the Chesapeake & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

SIMMS & ENSLOW and J. E. CHILTON, for plaintiff in error.

E. W. WILSON, for defendant in error.

DENT, JUDGE :

The Chesapeake & Ohio Railroad Company complains of a judgment for two hundred and fifty dollars rendered against it by the Circuit Court of Kanawha county at the suit of George W. Scott. The only witness personally introduced before the jury was the plaintiff, who testified : That on the 30th day of January, 1895, he purchased a round-trip ticket of the defendant, at Charleston, to Cincinnati and return, which is as follows : "Chesapeake & Ohio Railway Co. (One first-class passage.) Cincinnati, O., to Charleston, W. Va. Good returning only on trains Nos. 16 and 4, leaving Cincinnati at 7 :40 A. M. and 7 :00 P.

M., respectively, January 31st, 1895, and train No. 16, leaving Cincinnati at 7:40 a. m., February 1st, 1895. Not good for stop-over. Exc. 19. W. H. Fuller, General Passenger Agent. (4. Special Excursion.)" That he went to Cincinnati on that day, and stayed all night with his brother, and started to return the morning of the 31st,— the next day,—and missed the train. On the following morning he again went to the depot, with the intention of taking 7:40 a. m. train for home. He showed his ticket to the gateman, and passed in to where the train was standing, and went to get on the train, when the conductor or brakeman said to him: "The ticket ain't no account. You can't go on this train. Get out of the way." He went into the ticket office, and showed it to the agent, and the agent said: " 'That's all right. Go on and get on that train,' he says, and I went back, and the gateman would not let me through. I brought the ticket on back to him, and he said he would go up and get General Ryan to extend the time. I took it to General Ryan [general passenger agent for the Chesapeake & Ohio Railroad], and he said he would let me have a ticket for $4. And I told him that if he could not give it to me, or take it for its face value, I did not want a ticket at all; that it was a round-trip ticket and return. He said he would give me a ticket for $4." The usual fare is five dollars and fifteen cents. The reason he went to Gen. Ryan to have the time extended was because he had missed the train without his fault, on account of the servants of the company refusing to honor the ticket. He went back, and borrowed the money from his brother to buy a ticket, and the next day (February 2d) returned home. He denied telling any person that he missed the train on the 1st of February, but said he had remarked that he missed the train on the 31st, in the hearing of some strange women where his brother was staying.

The defendant introduced the depositions of three witnesses, Bertie Dole, Mary Hall, and Mary Ingram, whose testimony is to the effect that plaintiff told them, or remarked in their hearing, that he had missed the train on the 1st of February, 1895; also, the deposition of F. W. Lamberton, who says he was the conductor on the 7:40 A. M. train on the morning of the 1st February, 1895, and

that he did not prevent any one from getting on that train. Charles W. Thoburn, collector on the train, testified to the same effect. G. W. Mullins, brakeman on same train, testified to the same effect. A. W. Flowers and John McGrail testified that they were gate keepers at the depot the morning of February 1, 1895, and that they were the only two, and that neither of them prevented any one from passing through the gates on that morning because his ticket was not good, nor for any other reason. Also, Edgar Nornick, another gate keeper, testified to the same effect. These witnesses were not presented before the jury, nor submitted to cross-examination, and the jury were not afforded any opportunity of seeing them or hearing them testify. All of them, no doubt, testify to the best of their memories. Human memory is very treacherous, and, if they had been produced in court, by cross-examination their memories might have been refreshed. At least, the jury would have had a much better opportunity of judging of the truthfulness of their testimony. This was a risk the defendant must have decided to take, as it was fully able to produce its witnesses in court. It would have been good policy on the defendant's part also to have proven that such an occurrence did take place the morning of the 2d, when the ticket had expired, if it were possible to do so.

The depositions of these woman are hardly worth considering, for they testify that plaintiff said he missed the train the morning of the 1st, and that he went away the morning of the 2nd. This is, to some extent, corroborative of the plaintiff's testimony; for he did miss the train the morning of the 1st, and testified that he left for home the morning of the 2nd. The impression is endeavored to be produced that he missed the train for the reason that he was too late. This is not clear from the depositions, but he admits that he did miss the train for this reason the morning of the 31st January. Depositions of a doubtful nature, depending merely on questions of memory, have very little weight before a jury, and rightly so; for the very object of jury trials is to have, among other essential things, personal inspection and observation of the witnesses, including their mode and manner of testifying, under the supervision of the court and the rigid cross-exami-

nation of opposing counsel. The plaintiff was present, and submitted himself to the ordeal of a most rigid and searching cross-examination, in which able counsel used every lawful endeavor to impeach his testimony and prejudice him in the minds of the jury, from which he came out unscathed; and this fact may possibly have had the effect to increase the damages awarded, for jurors are oftentimes irritated by the unbearable and unjustifiable manner in which witnesses are sometimes unmercifully treated by censorious counsel. This, however, may not apply to this case, in any sense. But after the defendant has had the opportunity, but failed, to produce its witnesses in court, and the jury believe the witness produced before them, rather than the depositions of those not so produced, this Court could hardly be justified in holding the verdict to be contrary to the evidence. The jury heard the witness, and believed him, and refused to disregard his evidence, by reason of the uncertain testimony of those they did not hear. It is their province to weigh the testimony, and it is not for this Court to disturb their finding, sustained by the lower court, unless it is plainly contrary to the preponderance of the evidence. Every witness for the defendant may have sworn to what he honestly believed to be the truth, and yet the plaintiff's evidence be unimpeachable. How, then, can this Court disturb their verdict? Defendant claims that the plaintiff should not recover because he failed to produce his brother to corroborate him. The defendant failed to produce Gen. Ryan, general passenger agent, and the ticket agent, to contradict plaintiff. This is certainly an offset. The defendant says the ticket agent told him the ticket was good on that train, and when he missed it, by reason of the gate keeper refusing him admission, told him that he would get Gen. Ryan to extend it; but Gen. Ryan refused to do so, but told him he would sell him a ticket for four dollars. Neither of these witnesses is produced and the presumption is that they would corroborate plaintiff.

The defendant insists that the damages allowed are excessive, while the plaintiff insists that the damages are merely compensatory, according to the rule established in the cases of *Boster* v. *Railway Co.*, 36 W. Va. 318, (15 S. E. 158); *Sheets* v. *Railroad Co.*, 39 W. Va. 475, (20 S. E.

566); *Trice* v. *Railway Co.*, 40 W. Va. 271 (21 S. E. 1022)
—but that this is plainly a case justifying punitive damages for the disregard on the part of the company of the duty it owes to the public. The verdict of the jury is in effect that the defendant induced the plaintiff to purchase a round-trip ticket from Charleston to Cincinnati and return, at the price of three dollars and twenty-five cents, and, after he had gone to Cincinnati, peremptorily refused to comply with its contract and carry him back unless he would pay the additional sum of four dollars which he did not possess, but fortunately had a brother in the city from whom he could borrow. This latter fact ought not to mitigate the damages allowable. The jury, no doubt, placed themselves in this man's situation, induced to travel almost two hundred miles from home on promise of free and certain return, and then left without means, in a strange city, to return as best he could, and seek a court of justice for redress. To turn such a suitor away with mere nominal damages would be adding insult to injury. Under such circumstances, following the cases above referred to, it cannot be said that the verdict of the jury was excessively harsh. With Mr. Sedgwick, I am inclined to think that in all similar cases, while the damages are styled "indeterminate and compensatory," they are disguised punitive damages, intended to operate as exemplary in their nature. In the case of *Mayer* v. *Frobe*, 40 W. Va. 246, (22 S. E. 58), this Court held that "in actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct, or criminal indifference to civil obligations, affecting the rights of others, appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages." In Sutherland on Damages (volume 3, § 950) the rule is stated to be: "If a corporation like a railroad company is guilty of an act or default such as, in the case of an individual, would subject him to exemplary damages, it is equally liable thereto"; and "as the corporation can only act through natural persons, its officers and servants; and as it, of necessity, commits its trains or vehicles absolutely to the charge of persons of its own appointment; passengers, of necessity, commit to them their safety and comfort in *transitu*—the whole power and authority of the corpora-

tion *pro hac vice* is vested in such employes, and, as to such passengers, they are the corporation." In Webb's Pollock on Torts (page 220) the rule is stated to be, "To warrant a verdict for exemplary damages, it is necessary to prove either actual malice, wanton negligence, reckless conduct, or fraud." In the case of *Day* v. *Woodworth*, 13 How. 363, Mr. Justice Grier said: "By the common as well as by statute law, men are often punished for aggravated misconduct or lawless acts by means of a civil action and the damages inflicted by way of penalty or punishment given to the party injured." The true rule is given by Mr. Justice Gray in *Railway Co.* v. *Prentice*, 147 U. S. 101, (13 Sup. Ct. 261 :) "The jury may award exemplary, punitive, or vindictive damages, sometimes called 'smart money,' if the defendant has acted wantonly or oppressively, or with such malice as implies a spirit of mischief, or criminal indifference to civil obligations." Was the defendant guilty of such conduct in this case? The defendant is a mere creature of the law, having neither mind nor conscience to be the subject of evil intent or misconduct. Hence the law visits upon and imputes to it the misconduct of its agents acting within the scope of their authority. The Constitution of this State (section 9, Art. XI) declares all railroads to be public highways, free to all persons for the transportation of their persons. Clause 9, s. 82c, c. 54, Code, provides "that all railroad corporations, whose lines of road shall extend into or through the State, and which extensions are incorporated under the laws of this State or any other State, or the United States, shall take and transport passengers and freight when offered." The mere refusal to accept a passenger when offered is made illegal. How much more illegal is it for a corporation to sell a passenger a ticket, and then, after getting his money, refuse to let him ride on it! And still more aggravated to sell him a round-trip ticket, carry him one way, and refuse to permit him to return unless he pay an increased sum. Is not this aggravated and oppressive misconduct, and criminal indifference to legal obligations affecting the rights of others? Would it not be denounced in an individual as an extortionate mode of getting money under a false pretense? Is it not a wrong in which the public is vitally interested?

One of the foundation stones of civil government is the protection of the weak against oppressive, willful conduct of the strong, and this is a principle that should be most rigidly enforced against powerful corporations who derive their existence and strength wholly from the government. The jury found the defendant guilty of willfully and wantonly refusing to allow the plaintiff to return on a ticket that it had induced him to buy. In the case of *Heirn* v. *M' Gaughan*, 32 Miss. 1, the court held that the refusal to stop and take on a passenger was a public wrong, for which exemplary damages were allowable. And in the case of *Railroad Co.* v. *Hurst*, 36 Miss. 660, it was held that the jury was authorized to assess exemplary damages for the disregard of public duty against a railroad company for not allowing a passenger to get off at a station, but compelling him to leave the cars some distance therefrom. The object being, "in such cases to protect the public against the negligence, folly or wickedness which might otherwise convert these great public blessings into the most dangerous nuisances." The defendant in this case did not attempt to excuse or palliate in any manner the conduct of its servants in willfully and wantonly, and with some degree of aggravation and insult, refusing to return the plaintiff to his destination, but simply relied on a denial of the whole occurrence. The jury, on such evidence as it had, found against the defendant. Railroads can not do such things with impunity, and they must compel their servants to submit to the law of the land. If not, the law must vindicate itself through its judicial tribunals, substantially rewarding the injured party who seeks its vindication and the preservation of its integrity; and, though the remedy may appear harsh, it is far better that individuals should suffer than that the law should be rendered impotent and ineffective to prevent lawlessness, oppression, and wrong. In submission to former adjudications of this Court, the judgment is affirmed.

NOTE BY BRANNON, JUDGE:

I do not wish to be understood, by concurring in this judgment, as concurring with so much of the opinion as holds that punitive damages can be awarded against a corporation, which is contrary to the decision of this Court in *Ricketts* v. *Railroad Co.* 33 W. Va. 433 (10 S. E. 801), and *Downey* v. *Railroad Co.*, 28 W. Va.

732. The question is foreign to this case; at least, not necessary to its decision. What would be my opinion on it as an original proposition, I do not know, as I have not examined.

*Affirmed.*