# CHARLESTON.

McDONALD v. COLE et al.

Submitted January 21, 1899—Decided April 1, 1899.

1. EXECUTOR—Suits—Pleading.

Where one sues as executor or administrator, or in other representative character, there need be no proof of his appointment or authority, unless a plea denies it. A plea to the merits admits the right of the plaintiff to sue as he does. (p. 187).

2. CORPORATIONS—Agency— Partnership—Liability.

The false statement of an agent of a corporation appointed to buy timber for it, in making the contract, that the company is a partnership, does not bind its members or the corporation to liability as partners. Agent's misrepresentations and wrongs; how far binding. (p. 188).

3. PLEADING—Plea in Abatement—Non-Joinder.

The nonjoinder as defendants of other persons in an action against a partnership, must be pleaded in abatement filed at rules. The defendants sued cannot avail themselves of it after a plea to the merits. (p. 189).

4. RECOUPMENT—Contracts.

Recoupment for delay in execution of a contract cannot be allowed where the delay is owing to the act or fault of the party himself. (p. 190).

5. INSTRUCTIONS - Verdict—Error.

It is not error to refuse an instruction which puts a legal proposition, though sound, if the evidence to present it as pertinent to the case is slight, and only colorable, and does not fairly present it for consideration, and where a verdict finding according to the instruction would be set aside as without sufficient evidence. (p. 189).

Error to Circuit Court, Cabell County.

Action by Bilton McDonald administrator, against J. O. Cole & Co. Judgment for plaintiff. Defendants bring error.

*Affirmed.*

Campbell, Holt & Campbell, for plaintiffs in error.

Simms & Enslow and Herbert Fitzpatrick for defendant in error.

Brannon, Judge:

McDonald, administrator of Justice, brought an action of *assumpsit* in the circuit court of Cabell County against J. O. Cole and C. Crane, as late partners in the firm name of J. O. Cole & Co., to recover pay for some timber sold and delivered by the plaintiff's intestate to the defendants. The defendants pleaded *non assumpsit* and payment, and filed notice of recoupment, and by sworn plea denied that the defendants had been partners. The case resulted in a verdict for the plaintiff for eighteen hundred dollars, and the court, refusing a new trial, rendered judgment, from which the defendants obtained a writ of error.

The defense makes the point that, under the plea of *non assumpsit*, it rested on the plaintiff to prove that he had been legally appointed administrator. This position cannot be sustained. There is a plea distinctively called, in the books on common-law pleading, a plea of *"ne unques executor"* (or "administrator"),—"never executor." It must be used where it is intended to deny the right of the person to sue as executor or administrator, else his capacity to sue as such is admitted. 1 Chit. Pl. 517; 2 Lomax Ex'rs, 380. The cases of *Brown* v. *Nourse*, 55 Me. 230; *Langdon* v. *Potter*, 11 Mass. 313; *Champlin* v. *Tilley*, 3 Day, 303; and *Collins* v. *Ayers*, 13 Ill. 358,—show, on common-law authority, that where an executor or administrator sues, there must be the plea *ne unques*, else no proof of appointment is required. Generally, where one sues in a representative capacity, it need not be proven, unless there is a plea denying it. *Chicago Legal News Co.* v. *Browne*, 103 Ill. 317. Where there is a plea of general issue, or other plea to the merits, it admits the capacity of the plaintiff to sue. *Alderman* v. *Finley*, 52 Am. Dec. 244; *Pullman* v. *Upton*, 96 U. S. 328; 1 Bart. Law Prac. 501; *Bank* v. *Curtis*, 36 Am. Dec. 492. So it is where a corporation sues. Our statute was only necessary to require an oath to a plea denying incorporation. I regard the above-named plea as one in abatement, as it goes to

the disability of the person suing or sued. But the Massachusetts case says it may be pleaded in bar or abatement.

The second assignment of error is based on an instruction that if Lewis Cole was the agent of the defendants to purchase timber, and, when he entered into the contract with the plaintiff's decedent, he represented that the defendants were partners, and that if the plaintiff' decedent knew no better, and acted on such representation, and sold the timber which came to the hands of the defendants, then they were liable on the contract. I do not consider this instruction good law. I cannot see that, if a corporation appoints an agent to buy timber, his false declaration that stockholders or officers of it are partners would make them such, and bind them to a liability as such. True, the acts and statements of an agent, acting, in making a contract, within the scope of his authority, bind the principal as to all the elements of the contract, though particular statements were unauthorized. *Crump* v. *Mining Co.*, 7 Grat. 352. False and fraudulent statements of an agent, in the course of business within the scope of his authority, bind the principal. His torts done in the course of the principal's business, though unauthorized or forbidden, bind the principal. 1 Am. & Eng. Enc. Law (2d Ed.) 1143, 1151, 1159; Mecehm, Ag. § 714. See discussion as to negligence and torts of agents in *Bess* v. *Railway Co.*, 35 W. Va. 492, (14 S. E. 234); *Gillingham* v. *Railroad Co.*, 35 W. Va. 588, (14 S. E. 243); *Gregory's Adm'r* v. *Same*, 37 W. Va. 606, (16 S. E. 819). From these principles it might seem that such statements by this agent would make the parties liable as partners. But I think they do not afford the test. They do not mean the agent of one man can make another liable by representing that he is the purchaser. The act must be within the scope of authority, and that authorizes him to make only his real employers liable, not others and in a different character. But, though the instruction is bad law, is it reversible error? True, where there is any evidence to sustain the theory of an instruction, it ought to be given, as I stated in *Carrico* v. *Railway Co.*, 39 W. Va. 100, (19 S. E. 571); But *Boyd* v. *Pollock*, 27 W. Va. 75, and other cases, hold, that, if the evidence is so slight to sustain the theory propounded by

an instruction, it ought not to be given; and *Clay* v. *Robinson*, 7 W. Va. 349, holds that an erroneous instruction does not reverse where it is manifest that the defendant could not have been prejudiced by it. In the application of these principles, regard must be had to the particular case. In this case there was not a syllable of written evidence of the incorporation of any company. Indefinite statements were made by witness tending to show incorporation in Kentucky; but the parties themselves spoke so indefinitely, vaguely, and perhaps evasively, that it could not possibly justify a jury in finding the fact of incorporaiton, or or justify the court in refusing to set it aside if found. The parties themselves on the stand frequently spoke of "the firm," referring to this company, thus indicating that they regarded it a partnership. For an appellate court to reverse for failure to give an instruction, the evidence should, at least, fairly present the theory on which it rests, not merely colorably. *Industrial Co.* v. *Schultz*, 43 W. Va. 471, (27 S. E. 255).

The third point of error assigned is that the court gave for the plaintiff an instruction to the effect that, before it could find for the defendants on the plea of no partnership, it must find that the defendants were not members of the firm known as J. O. Cole & Co.; and that, if J. O. Cole and C. Crane were in fact members of a firm doing business as J. O. Cole & Co., the fact that there were other members of the firm did not support the issue on the part of the defendants; and, that, if said defendants were members of the firm, then the jury must find for the plaintiff that Cole and Crane were partners. This point is answered by *Rutter* v. *Sullivan*, 25 W. Va. 427, holding that, in *assumpsit* against a partnership, if defendants claim that other persons should have been sued, that could be raised only by a plea in abatement filed at rules. So, this matter cannot affect the case.

The fourth point of error is that the court refused the defense an instruction to the effect that it was the duty of Justice to put the timber into the creeks as soon as possible after being measured and branded, and deliver it into Guyandotte river at all events by August 1, 1893; and that if he neglected to do so, and, in consequence of his neglect,

a portion of the timber was caused to lay over for one or two years, and thereby sap-rot, and deteriorate in value, and that Cole & Co. were put to expense to get it into the river, then the jury should ascertain the damage and expense, and allow it as credit on the unpaid purchase price. The court gave this instruction, but with the addition of the words, "unless the jury find that the delay was caused by the acts of the defendants themselves; and if the jury find that the defendants caused the delay, and afterwards took the timber and credited Alonzo Justice with it, then the plaintiff is not responsible for the loss occasioned by the delay." The defense claimed that the plaintiff failed to finish the delivery of the logs by the time stipulated, and that a large number were left in the woods and not delivered, whereby they were compelled to bring them out at expense, and that the logs lay in the woods a long time, and suffered injury from sap-rot, and for this expense and injury the defendants claimed a large recoupment. In answer to this, the plaintiff claimed that, before delivery was completed, defendants financially failed, and a receiver was appointed for the firm, and that these logs were attached as its property, and were listed by the receivers as such, and that such delay in delivery and injury from sap-rot arose from the defendants' own fault. The law is that recoupment for failure to execute a contract cannot be claimed, if the failure is attributable to the fault of the other party. *Abbott* v. *Gatch*, 71 Am. Dec. 635; *Chapman* v. *Dease*, 34 Mich. 375; *Hill* v. *Sibley*, 56 Ga. 531; Wat. Set-Off, 540.

By 1st June, 1893, J. O. Cole & Co. had become so involved that they made an assignment for the benefit of creditors, and receivers were appointed for their property. Was Justice bound to finish delivery without hope or payment? The failure to deliver by August 1, 1893, was not the fault of Justice. If this amendment had not been made to the instruction, it would have been error against the plaintiff, as it ignored the evidence of defendents' inability to comply with their contract., and told the jury only that if there was failure to deliver, and the logs lay in the wood and sap-rotted, they must allow a recoup-

ment therefor. *McCreery's Adm'x* v. *Railroad Co.*, 43 W. Va. 110, (27 S. E. 327).

The fifth assigned error is that the evidence showed that J. O. Cole & Co. was a corporation, not a partnership, yet judgment went against Cole & Crane as partners. As said above, there was no evidence at all adequate to show an incorporation, and, the finding of the jury covering the matter, we cannot reverse it. "The weight of the evidence is for the jury, and unless it plainly preponderates against the verdict, it will not be disturbed." *Scott* v. *Railroad Co.*, 43 W. Va. 484, (27 S. E. 211).

The sixth assignment of error is that against plain evidence that a large part of the timber was not delivered in time, in fact not at all, but left in the woods and in branch streams of Guyan river, and deteriorated from sap-rot, and the defendants had to spend money to get it out, yet the jury wholly ignored recoupment under those facts. Now, the evidence was conflicting as to whether all the timber was delivered, and as to deterioration, and I might assign this as a reason for refusing to set aside the verdict. But on the merits of the case was a mass of evidence, and I see no reason for reversing the solution of the controverted case furnished by the verdict and judgment. I conclude from the record that the jury took the plaintiff's demand under the contract based on the number of logs credited to Justice on the company's books when branded by the company, and which went to the hands of the company, and then abated an amount to cover getting out the logs as expense incurred by the company, and found the balance for the plaintiff, and refused any recoupment for sap-rot, because the jury attributed it to the fault of the defendants. The difference between the demand and the verdict, and the evidence as to cost, lead me to this conclusion. For these reasons we affirm the judgment.

*Affirmed.*