# CHARLESTON

## Nichols v. Camden &c Ry. Co.

Submitted March 5, 1907.   Decided October  29, 1907.

1. Appeal—*Harmless Error*.

   No judgment should be reversed by the Appellate Court when it is clear that the error could not have prejudiced and did not prejudice the rights of the party against whom the ruling was made.  (p. 413.)

2. Evidence—*Presumptions—Failure to Produce Witness*.

   Where a party to a controversy fails to examine a material and important witness in his behalf, it will be presumed that the evidence of such witness, if given, would be adverse to such party. (p. 414.)

3. Appeal—*Review—Award of Damages*.

   The verdict of the jury in an action by a passenger against a carrier for injuries sustained, must govern unless the damages allowed are so excessive as to warrant the belief that the jury was influenced by partiality or prejudice, or misled by some mistaken view of the merits of the case.  (p. 416.)

4. Trial—*Instructions—Damages*.

   In such action where there is a demurrer to the evidence, it is not error for the court to tell the jury if the issue is found for the plaintiff "the damage should be at least one cent." (p. 416.)

Error to Circuit Court, Cabell County.

Action by Nellie Nichols against the Camden Interstate Railway Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

Vinson & Thompson, for plaintiff in error.

Isbell & Perry, for defendants in error.

McWhorter, Judge:

This was an action of trespass on the case brought in the circuit court of Cabell county by Nella Nichols against the Camden Interstate Railway Company for personal injuries to the plaintiff when a passenger on one of the cars of the defendant, inflicted upon her by a drunken fellow passenger, the defendant failing and neglecting to protect plaintiff while

such passenger from injuries by such drunken man as it was defendant's duty to do. Plaintiff's grounds of complaint are set out in her declaration as follows: "And the plaintiff avers that on the year and day aforesaid, in accordance with the regulations made by the defendant, she paid to the street car conductor, one of the defendant's servants, on this said street car, cash fare from Clyffside Park, Kentucky, to Huntington, West Virginia, whereby the said defendant undertook and agreed to transport the said plaintiff as a passenger, on and over its said street car, from the said Clyffside Park, Kentucky, to Huntington, West Virginia, when it then and there became and was the duty of the said defendant to use proper care and vigilance to protect this plaintiff from injuries by such persons that might reasonably have been expected to do said plaintiff some injury, but the said defendant disregarding the rights, and wholly failing to protect this plaintiff and to use proper care and vigilance to protect her from injuries, by another passenger, which might have reasonably been foreseen and anticipated and could have been reasonably foreseen and anticipated, permitted a drunken man to become a passenger on the car with this plaintiff and to thereby assault this plaintiff, to fall upon her, to vomit upon her and to cause her great pain and distress of body and mind and to become sick, fainting and to otherwise endanger the plaintiff's life, wherefore plaintiff says that she is injured and hath sustained damages to the amount of twenty five hundred dollars."

Defendant interposed a demurrer to plaintiff's declaration which was overruled. Defendant then entered its plea of not guilty which plea was tried before a jury and when the plaintiff's evidence was all in the defendant demurred thereto in which demurrer the plaintiff joined and the jury returned a verdict that if the law should be held to be for the plaintiff then they found for the plaintiff and assessed her damages at $300, but if the law should be found for the defendant then they found for the defendant.

The defendant moved the court to set aside the verdict and grant it a new trial because the said verdict was excessive and because the court misdirected the jury, which motion the court overruled, to which ruling the defendant excepted

and the court having maturely considered the defendant's demurrer to the evidence overruled the same. And the court being of the opinion that there was error in the admission of the testimony relative to the injuring of the plaintiff's hat and dress and that the evidence relating thereto should not have gone to the jury required plaintiff to release Twenty-five ($25.00) Dollars of the verdict of the jury assessed as the plaintiff's damages herein; whereupon the plaintiff released said twenty-five dollars, to all of which action of the court the defendant excepted. The court then rendered judgment for plaintiff for $275.00, the amount of damages assessed by the jury less the $25 so released.

The evidence is all certified in the defendant's demurrer and made a part of the bill of exceptions. Counsel for plaintiff in error rely in their brief for defense principally upon the want of evidence to sustain the verdict, and cite from section 1639, Vol. 4, Elliott on Railroads, where it is said, if the company and its employees have no knowledge of the dangerous character or condition of the person who commits the injury and could not have reasonably foreseen and anticipated it the company would not be liable. But we find in the same section: "As a railroad company is in duty bound to use care and vigilance to protect its passengers who have placed themselves under its control, and as it has the right and power to eject disorderly persons, it is liable to a passenger who, without fault on his part, is assaulted and injured by a stranger or a fellow passenger, if it or its employes in charge of the train could reasonably have foreseen and prevented it. Thus, where an intoxicated and disorderly or dangerous person is knowingly admitted to the train, or the conductor and other employes fail to take any steps to remove a passenger who becomes disorderly and dangerous, or to otherwise protect other passengers from him when they could do so, the company will usually be liable for injuries caused by him to such other passengers." At section 1591, *Id.* it is said: "The rules affirmed by the weight of authority is that a railroad carrier is bound to exercise a high degree of care to protect its passengers from injury by third persons, * * * * Whether the care the law requires was exercised

must generally be determined upon the facts of the particular case.'' And authorities there cited.

'A. C. Howell, a witness for plaintiff, testified that the conductor on the car passed the drunken man twice and pushed him from the aisle into his seat; that after he passed, the man would again take hold of the guard-rail on the side of the seat and again swing around; and stated that if the conductor "didn't know he was drunk it was past me, because he had to push him out of his way twice. I knew he was drunk.'' Witness further states that after the drunken man had vomited on plaintiff and she had fainted, he asked the conductor if there was any water on the car and the conductor said "No, sir, we don't carry water.'' The witness states that he and a young man were working with plaintiff to bring her to consciousness he said, "she looked mighty sick to me. She was as pale as a corpse.'' And was asked whether the conductor assisted him and answered, "No, sir, the conductor didn't do anything. He didn't pay any more attention to him than if he had been a possum.'' He further states that the conductor and motorman, after the car got to Ceredo at the switch, came and took hold of the drunken man and put him off pretty rough. This must have been several minutes after the man had "thrown up" as the witness stated that when he "threw up" the car "was somewhere close to the viaduct that goes across the river at Kenova. I think it was as close to that as I can possibly describe it.'' The injury to plaintiff by becoming sick from the effects of the vomiting upon her and the drunken man falling or being thrown upon her is proven by herself and Mrs. Nichols, mother of the plaintiff. The plaintiff offered evidence to prove injury to plaintiff's hat and dress, to which evidence defendant objected there being no allegations in the declaration covering that damage. Defendant also offered an instruction "that the plaintiff is not entitled to recover any damages in this action on account of injury to or loss of dress, hat or other wearing apparel,'' which the court refused to give. Before rendering judgment, however, the court required the plaintiff to release $25 from the verdict which was the maximum amount proved to be the damage sustained by the clothing, hat and dress, and gave judg-

ment for the residue of the verdict—$275.00. So that the
defendant was not prejudiced by the admission of the evi-
dence and the refusal to give said instruction, and such
error is not reversible error. "No judgment should be re-
versed in a court of error when it is clear that the error
could not have prejudiced and did not prejudice the rights of
the party against whom the ruling was made." *Lancaster* v.
*Collins*, 115 U. S. 222, citing *Deery* v. *Cray*. 5 Wall. 795,
803; *Gregg* v. *Moss*, 14 Wall. 564, 569; *Lucas* v. *Brooke*, 18
Wall. 436, 454; *Allis* v. *Insurance Co.*, 97 U. S. 144, 145;
*Vannon* v. *Pratt*, 99 U. S. 619; *Mining Co.* v. *Tay-
lor*, 100 U. S. 37, 53; *Hornbuckle* v. *Stafford*, 111 U. S.
389, 394.

Instruction No. 3, offered by defendant in the following
words: "The Court instructs the jury that an intoxicated
man has a legal right to ride in a public conveyance, and that
the failure of a street car company to expel an intoxicated
man from its car does not render it liable for an injury
inflicted by him upon a fellow passenger where the intoxi-
cated man has not been demeaning himself in such manner
as to forfeit his legal right to ride, and so long as an intox-
icated man remains quiet and molests no one, he cannot be
legally expelled.

And if the jury believe from the evidence in this case
that the intoxicated man referred to by the witness was
quiet and orderly and was guilty of no misconduct other
than swaying from side to side in the aisle of the car, that
the conductor of the said car would have no right to put
him off of the car; and if they believe that after the drunken
man vomited and thereby became offensive to the other
passengers the conductor and officers of the said car did
put him off, then the defendant was not guilty of any wrong
or negligent conduct towards the plaintiff and the plaintiff
is not entitled to recover damages;" was modified by leav-
ing out the last paragraph of said instruction, being all
after the word "expelled." This modification was proper
because the part left out would tell the jury that if the
conductor and officers of the car put the drunken man off
after he vomited and became thereby offensive to the other
passengers then the defendant was not guilty of any wrong
or negligent conduct towards the plaintiff and the plaintiff

is not entitled to recover damages. This without regard
to the condition or conduct of the drunken man prior to and
including the final act complained of, and the duty of the
conductor and agents of the defendant in relation to the
expulsion of such man from the car or exercising such con-
trol over him as to secure full protection to the plaintiff
and other passengers from the improper conduct of the
man, whom it is shown the conductor knew to be drunk,
and that if, at any time after the mischief was done, they
put the offender off the car defendant would be relieved
from liability. Witness Howell says the conductor paid no
attention to him at that time, although his attention was
called to the matter when the witness asked him if there
was any water on the car. It was clearly inferable from
this that the conductor was present at the time witness was
trying to resuscitate plaintiff, and probably when the vom-
iting took place. The "putting off" took place at the
switch at Ceredo, while the "throwing up" occurred at the
viaduct or some where between Kenova and Ceredo. The
distance from Kenova to Ceredo is not shown but it is shown
that it took from ten to fifteen minutes to run the car from
Hampton City, on the opposite side of the Sandy River from
Kenova to Ceredo.

With all this evidence in support of plaintiff's claim, the
defendant elects to risk his demurrer to the evidence instead
of showing the incorrectness of it by the conductor, who
was a competent witness in the case and a very important
one for the defendant; but he was not called. And why?
The presumption is that if he had been placed upon
the stand his testimony would have corroborated that of the
witnesses for plaintiff and would not have helped the de-
fense. In *Dewing* v. *Hutton*, 48 W. Va. 576, it is held:
"When a party to a controversy fails to examine a material
and important witness in his behalf, the law raises the pre-
sumption that such witness' evidence if given, would be
adverse to such party." See also *Vandervort* v. *Fouse*,
52 W. Va. 214; *Trust Co.* v. *McClellan*, 40 W. Va. 405.

It is insisted by plaintiff in error that the verdict is ex-
cessive. In 1st Sutherland on Damages, section 459: "Where
there is not a legal measure of damages, and where they are
unliquidated, and the amount thereof is referred to the dis-

cretion of the jury, the court will not, ordinarily, inter-
fere with the verdict. It is the peculiar province of the
jury to decide such cases under appropriate instructions
from the court; and the law does not recognize in the latter
the power to substitute its own judgment for that of the
jury. Although the verdict may be considerably more or
less than in the judgment of the court it ought to have
been, still it will decline to interfere unless the amount is so
great or small as to indicate that the jury must have found
it while under the influence of passion, prejudice or gross
mistake; or in other words, that it is the result of accident
or perverted judgment, and not of cool and impartial delib-
eration." And cases there cited. In *Farish* v. *Reigle*, 11
Grat. 697; it is held: "In actions by passengers against
carriers, for injuries sustained, the judgment of the jury as
to the amount of the damages, must govern, unless the
damages allowed are so excessive as to warrant the belief
that the jury must have been influenced by partiality or
prejudice, or misled by some mistaken view of the merits
of the case." See also *Trice* v. *Railroad Co.*, 40 W. Va.
271; *Boster* v. *Railway Co.*, 36 W. Va. 318, (15 S. E. 158);
13 Cyc. 121, and cases there cited. In *Boster* v. *Ry. Co.*,
cited, at page 324, JUDGE HOLT says: "It was right to
give him some damages, but how much? Thirty cents would
have made him whole for the money paid out for which
he received nothing. The court would have told them, if
asked, that after considering the case carefully, fairly and
dispassionately, according to all the facts, they could in
fixing the damages, if they allowed any, take into con-
sideration what would be a proper compensation for mental
and physical pain, insult and humiliation, if any, in addition
to the thirty cents." In *Railway Co.* v. *Baird*, 54 L. R.
A. (Ala.) 752, it was held: "Two thousand five hundred
dollars is not an excessive award against a street car com-
pany for the act of its conductor in striking a passenger
several times in the face merely because in order to stop
the car, he pulled the bell rope so hard as to break it."
And in *Mabry* v. *Electric Ry. Co.*, 59 L. R. A. (Ga.)
590, it is held: "A railroad company is liable in damages
for an injury to the feelings and sensibilities of a passen-
ger, caused by his wrongful expulsion from one of its
cars, though such passenger may not have received any

physical injury thereby." In *Stevens* v. *Friedman*, 58 W. Va. 78 (51 S. E. 132) at page 85, JUDGE COX, in speaking for the Court, says: "It may be very difficult to see from reading the record, how the jury arrived at the conclusion that plaintiff was entitled to $1,000.00, damages, under the evidence and circumstances presented. But in obedience to plain law, we feel compelled to sustain the finding." Mr. Minor, in his 4th volume of Institutes, at page 930, treating of this principle, says: "The estimation of damages is peculiarly within the province of the jury, they being considered especially competent to determine such matters; and, therefore, it is particularly incumbent upon the court to forbear any encroachment upon the function of the jury in this particular, save in the strongest cases of injustice. No mere *difference of opinion* on the part of the court, however decided, justifies an interference with the verdict for this cause; but the amount must be so out of the way as to *evince passion, prejudice, partiality, or corruption* in the jury." Citing 6 Com. Dig. 227, Plead. (R. 17); *Coleman* v. *Southwick*, 9 Johns. (N. Y.) 45; *McConnell* v. *Hampton*, 12 Johns. (N. Y.) 234.

In *Heard* v. *Railway Co.*, 26 W. Va. 455, (Syl. pts. 1 and 2), the rule is clearly stated as to how a demurrer to evidence, where there is no conflict, should be considered by the Court, which rule has been followed by this Court in many cases since. In *Mannon* v. *Camden-Interstate Ry. Co.*, 56 W. Va. 554, (Syl. Pt. 4), it is held: "Judgment of the circuit court over-ruling a demurrer to evidence, will be affirmed unless it is contrary to the plain, preponderance of the evidence or it is without evidence to support it as to some material question at issue."

It is further said that the court erred to the prejudice of the plaintiff in error in its remarks to the jury respecting damages, stating that in case they found the issue for the plaintiff "the damage should be at least one cent." The jury was not instructed to find for the plaintiff, but simply told if the issue was for the plaintiff she was entitled to damages, however small. Counsel for plaintiff in error in his brief does not point out how his client is prejudiced by the remarks of the court.

There being no reversible error in the judgment of the circuit court the same is affirmed.

*Affirmed.*