. JAMES HANFORD

*v.*

METROPOLITAN LIFE INSURANCE COMPANY

(No. 9956)

Submitted January 20, 1948. Decided March 16, 1948.

228

William E. Glasscock, for plaintiff in error.

H. William Largent and Kermit R. Mason, for defendant in error.

HAYMOND, JUDGE:

This action of assumpsit was instituted November 28, 1945, in the Circuit Court of Monongalia County upon a policy of life insurance issued by the defendant, Metro-

politan Life Insurance Company, to the plaintiff, James Hanford. The plaintiff seeks a recovery for benefits claimed to have accrued to him under the provisions of the policy by reason of his alleged total and permanent disability, and for premiums paid by him, during the period January 13, 1928, to September 21, 1939. To an adverse judgment for $4,143.22, entered March 7, 1947, upon the verdict of a jury in favor of the plaintiff, the defendant prosecutes this writ of error.

To the declaration which was in the short form authorized by statute and with which was filed the original policy of insurance, the defendant filed its plea of the general issue by which it denied any liability under the policy and its plea of the statute of limitations as to any and all benefits accruing and premium payments made more than ten years prior to the date of the institution of the action. The defendant also filed its written statement of defenses in which it denied the existence of any claim or cause of action in favor of the plaintiff against it for the reason that it did not receive, until September 21, 1939, due proof that the plaintiff, as the result of injury or disease occurring after the issuance of the policy sued on, had become totally and permanently disabled. The statement contained a denial that the plaintiff was entitled to any waiver of payment of premiums which became due during the period of his alleged disability from January, 1928, to September 21, 1939, or to recover any premiums paid by him during that period. In the statement the defendant also denied that the plaintiff was entitled to recover any benefits because of his alleged disability under the policy of insurance until six months after the date of the receipt by the defendant of due proof of disability. The plaintiff filed his special replication in which he alleged that the defendant received due proof of the disability of the plaintiff on and prior to August 22, 1932, and that continuously during the period 1928 to 1939 the defendant refused to recognize the claim of the plaintiff for disability benefits and by its refusal to recognize and pay his claim waived its right to demand proof of disability. By its rejoinder in writing the de-

fendant denied the allegations of the special replication of the plaintiff.

Upon the foregoing pleadings, upon evidence introduced in behalf of the plaintiff, the defendant not having offered any evidence, and upon instructions given by the court at the instance of each of the parties, and after the court had overruled a motion of the defendant for a directed verdict in its favor, the case was submitted to the jury. A verdict for the plaintiff resulted for disability benefits accrued and premiums paid by him during the period November 28, 1935, to September 21, 1939, and interest, in the aggregate amount of $4,143.22. The court overruled the motion of the defendant to set aside the verdict and grant a new trial and rendered the judgment which the defendant assails in this Court.

The plaintiff, fifty four years of age at the time of the trial of this case in February, 1947, and a resident of Morgantown for many years, purchased from the defendant on February 21, 1920, the policy of life insurance upon which this action is based. The face amount of the policy is five thousand dollars. The policy contains a supplemental agreement which provides, upon stated terms and conditions, for the payment of total and permanent disability benefits and waiver of premiums by the defendant in the event the plaintiff should become totally and permanently disabled as the result of injury or disease occurring after the issuance of the policy. The pertinent portions of this supplemental agreement contain this language:

"Total and Permanent Disability Provision.

"Supplemental Agreement to Policy No. 2535221A issued on the life of James Hanford.

"The Metropolitan Life Insurance Company in consideration of an additional premium of seven dollars and forty cents, payable at the same time and under the same conditions as the regular premium under the policy to which this agreement is attached, except that the additional premium shall cease on the anniversary of the policy after the insured has attained sixty years of age,

doth hereby agree, that if while the above numbered policy is in full force and effect, and before default in the payment of any premium, the Company receives due proof that the insured, as the result of injury or disease occurring and originating after the issuance of the policy, has become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit, the Company will allow the following benefits:

"(a) Provided said disability occur before the Insured attains sixty years of age, but not otherwise, the Company, commencing with the anniversary of the policy next following receipt of such proof, will waive payment of each premium becoming due during such disability, and, in addition, commencing six months from the receipt of such proof, will pay each month, during the continuance of such disability, to the insured, or to the person designated by him for the purpose, or if there be no such person designated, then to such person as may be found by the Company to have the care of the person of the insured, a monthly annuity of $10.00 for each $1,000 of original insurance under the policy. * * *".

Prior to 1928 the plaintiff was in good health. On January 13 in that year, while occupying the position of general manager of the National Fuel Company, he sustained an injury to his knee resulting in total and permanent disability which has since continued and which persisted at the time of the trial of this case in February, 1947. Because of his injury he has not been employed since January, 1928. He was treated during the period 1928 to 1939 by a Doctor Price, who died before the trial, and by other doctors, only one of whom, Doctor Thompson, testified in the case. This doctor treated the plaintiff for an injury to his finger in 1920. He also attended the plaintiff at times in 1929 and 1930 and later treated him for an injury to his shoulder and examined him in 1941. Doctor Thompson, however, did not treat the plaintiff for his original injury in 1928, but he expressed the opinion that the plaintiff had been disabled and unable to work since 1930 or 1931.

In April, 1928, while the plaintiff was confined to his bed as the result of his injury, he communicated with a man named Theodore Hansen who was the manager of the Fairmont office of the defendant company, and verbally notified him of his injury and informed him that he made claim for disability against the defendant under the policy of insurance. The plaintiff had received a loan from the company upon the policy and at the time he talked to Hansen about his claim Hansen had possession of the policy. The plaintiff also wrote to the defendant at its home office concerning his claim for disability as often as twice each year during the period 1928 to 1939. Neither the originals nor any copies of letters from the plaintiff to the defendant prior to October 20, 1939, which dealt with that subject, were produced or offered in evidence. No proof was introduced of the contents of the letters of the plaintiff to the defendant prior to October 20, 1939, concerning his claim for any disability occurring in 1928. The plaintiff was examined in 1930 by a Doctor Post, who at that time represented the defendant, and was examined a second time in 1941 by another physician employed by the defendant for that purpose. During the period 1928 to September 21, 1939, the defendant did nothing to indicate that it had received any notice or proof of any claim of the plaintiff for disability as a result of the injury to his knee in January, 1928, or that prior to October 20, 1939, it rejected any claim or denied liability resulting from disability caused by that injury.

On August 22, 1932, the plaintiff fell and sustained another injury which consisted of a fracture of his right arm at the shoulder. He made claim of total and permanent disability as a result of this injury and filed with the defendant written proof of claim dated September 27, 1932. That proof of claim is in the form provided by the defendant and states that the total and permanent disability claimed by the plaintiff was caused by the injury to his shoulder sustained on August 22, 1932. The statement in the proof of claim signed by the plaintiff describes the nature of the injury as a fractured humerus at the shoulder joint and asserts that the plaintiff was

first totally disabled from work on August 22, 1932, as the result of that injury but it makes no mention of any knee injury in 1928. The certificate of Doctor Price appears as part of this proof of claim and, though he mentions in it an infected knee for which he treated the plaintiff about three years previously, he describes the disabling injury as a fracture of the right humerus and says that the plaintiff was wholly unable to engage in any work or occupation and had been so disabled since August 22, 1932. He also states that, in his opinion, the total disability of the plaintiff will be temporary. The defendant treated the reported disability of the plaintiff as temporary and refused to recognize it as total and permanent. At that time it made no payments of disability benefits to the plaintiff on account of this claim, and the plaintiff then did nothing to require its payment by the defendant.

As of September 21, 1939, without the filing of any proof of claim by the plaintiff, but upon notice, dated August 26, 1939, and received by the defendant, that the plaintiff intended to make claim of disability, and upon receipt by the defendant of due proof of total and permanent disability of the plaintiff in the form of a statement from its examining physician which satisfied the defendant that the plaintiff had been totally and permanently disabled for some period of time before that date, the defendant commenced the payment of disability benefits under the policy to the plaintiff and waived the payment of premiums from and after that time, without requiring the plaintiff to wait six months from the receipt of proof of disability as provided in the policy of insurance. The defendant has continued to pay the plaintiff the disability benefits and to recognize the waiver of premium payments, under the policy, since September 21, 1939, and this position of the defendant was established at the trial. No question arises in this case with respect to waiver of premiums and payment of disability benefits subsequent to September 21, 1939.

In letters dated October 20 and December 13, 1939, written by the plaintiff and addressed to the disability

claim division of the defendant in New York, the plaintiff refers to the injury to his knee. In his letter of December 13, 1939, he says: "As explained in former correspondence, this injury of my kneecap took place on Friday, January 13th, 1928. Altho the cut was at once dressed at home, infection set in and I lay in bed the best part of 1928 with explicit advice to stay off my feet. My physician, Dr. R. Coale Price, since deceased, suggested that I be moved to Pittsburg for the amputation of the leg above the knee. My refusal to do so still leaves me with something better than wood from the hip down." The defendant, in a letter dated December 18, 1939, acknowledged receipt of plaintiff's letter of December 13, and with respect to the disability claim of the plaintiff, said: "Upon reviewing our file, we find that in 1932 you first made claim to the Company for total and permanent disability benefits, but the facts and evidence received at that time failed to establish a total and permanent incapacity was suffered. This fact appears to negative any claim of a total and permanent disability which has been in continuous existence from January 13, 1928. Further, in 1932, you certified to total and permanent disability commencing August 22, 1932, and not January 13, 1928. * * * the commencement date of total and permanent disability benefits is not predicated on the date total and permanent disability begins but rather on the date the Company receives due proof of the existence of a total and permanent disability. And it was not until September 21, 1939, that the Company received medical evidence of total and permanent disability, and this was the statement of our own examining physician. In accordance with the specific terms of the disability agreement, payments should commence March 21, 1940, but in view of the fact that it appeared you had been totally and permanently incapacitated for some time previous to September 21, 1939, the Company made an exception and waived the six months waiting period by commencing payments as of the date of receipt of proof of total and permanent disability, September 21, 1939." After recognizing the plaintiff's claim for disability from and after September 21, 1939, the

defendant denied liability for any claim of that character prior to that date and this action resulted.

Upon the trial the circuit court gave effect to the plea of the statute of limitations filed by the defendant and ruled that there could be no recovery by the plaintiff of disability benefits accrued or premium payments made before November 28, 1935, which was ten years prior to the date of the institution of this action. In view of that ruling, and as it appears that the defendant has paid disability benefits and waived the payment of premiums since September 21, 1939, the attorneys for the respective parties, by written stipulation, agreed that if the plaintiff was entitled to recover he should receive the principal sum of $2,845.65, with interest of $1,297.57, or an aggregate of $4,143.22. As heretofore stated, the jury returned a verdict for the plaintiff in that amount.

The defendant assigns a number of errors in which is included the action of the trial court in admitting certain evidence offered by the plaintiff, in giving designated instructions submitted by the plaintiff, and in refusing to give a peremptory instruction which would have directed the jury to return a verdict in favor of the defendant. The assignments of error present the primary and controlling question of the effect, upon the claim of the plaintiff for the payment of disability benefits and the repayment of premiums paid by him during the period January 13, 1928, to September 21, 1939, of the failure of the plaintiff to furnish to the defendant prior to September 21, 1939, due proof of the total and permanent disability of the plaintiff, as required by the disability agreement in the policy of insurance issued to him by the defendant in February, 1920, and on which the plaintiff bases this action. If the decision of that question is adverse to the claim of the plaintiff, it will be unnecessary to consider or discuss any other issue in the case.

It is evident from the facts developed upon the trial, as heretofore stated, that the plaintiff did not furnish any proof of total and permanent disability which resulted from either of the injuries sustained by him. He admits

that he never gave the defendant any formal signed statement of the disability produced by the injury to his knee on January 13, 1928. His only efforts in that respect were his verbal statement of his injury to Hansen who appears to have been at the time an agent of the defendant in charge of its Fairmont office and his letters to the defendant. The verbal statement of the plaintiff to Hansen, however, amounted to nothing more than notice of his claim. It did not constitute due proof or any proof of disability. There is no showing of any promise or representation by Hansen which could have the effect or take the place of receipt of due proof of disability by the defendant. Nothing of that nature is contended for by the plaintiff or even suggested in the evidence. As no proof of disability was given to or filed with Hansen by the plaintiff it is unnecessary to consider or determine whether he was the agent of the defendant for the purpose of receiving such proof. Though the plaintiff says that he wrote the defendant about his injury of January, 1928, as often as twice each year prior to September, 1939, he does not undertake to establish the contents of his letters to show that they contained any statements which amounted to due proof of his disability due to that injury. The plaintiff did furnish proof of disability due to a fracture of his right arm at the shoulder joint sustained August 22, 1932, but the character of the disability was described as temporary instead of permanent by the doctor who completed the proof of claim in behalf of the plaintiff. The disability of the plaintiff was considered as temporary by the defendant and, as indicated by the statements in its letter of December 18, 1939, the claim was denied for that reason.

The provision of the disability agreement of the policy is that the defendant agrees that if it receives due proof that the plaintiff, as the result of injury or disease occurring and originating after the issuance of the policy, has become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit it will waive the payment of each preimum becoming due after receipt of

such proof during such disability, and, in addition, commencing six months from the receipt of such proof, will pay a specified amount each month during the continuance of the disability, upon stated terms and conditions. This provision is free from ambiguity. Its meaning is clear and its requirement is definite. The purpose of the requirement of proof of disability is to show the fact of disability and to furnish the insurer with the particulars of the loss and such information concerning it as may be necessary to enable it to determine the character and the amount of its liability. 3 Appleman, Insurance Law and Practice, Sections 1446 and 1471. A clear and unambiguous provision of a policy of life insurance, as that of any other contract, will be given the plain meaning and effect of the language used by the parties to the contract. *Adkins* v. *Aetna Life Insurance Co.*, 130 W. Va. 362, 43 S. E. 2d 372; *Shank* v. *Jefferson Standard Life Insurance Co.*, 128 W. Va. 435, 36 S. E. 2d 897; *Jenkins* v. *New York Life Insurance Co.*, 122 W. Va. 73, 7 S. E. 2d 343; *Hayes* v. *Prudential Insurance Co.*, 114 W. Va. 323, 171 S. E. 824; *Da Corte* v. *New York Life Insurance Co.*, 114 W. Va. 172, 171 S. E. 248; *Iannarelli* v. *Kansas City Life Insurance Co.*, 114 W. Va. 88, 171 S. E. 748.

Though the time within which the required proof of disability should be received by the defendant is not stated in the policy, the effect of the provision is to require such proof to be presented within a reasonable time. *Milam* v. *The Equitable Life Assurance Society of the United States*, 117 W. Va. 77, 183 S. E. 865.

As has been already stated, the plaintiff failed not only to submit due proof of total and permanent disability within a reasonable time after it resulted from either of his injuries, but he neglected to present any such proof whatever until September 21, 1939, when proof which was accepted by the defendant was received by it. The principle has been recognized by appellate courts in many jurisdictions in this country that when a life insurance policy does not violate any statutory rule governing its issuance and provides for proof of disability within a specified

period of time, it will be held to be a valid and binding contract between the parties to it and the requirement that proof of disability be furnished will be treated as a condition precedent to the liability of the insurer, during the period of disability of the insured, to refund the payments of premiums made by him or to pay disability benefits. *Shank* v. *Jefferson Standard Life Insurance Co.*, 128 W. Va. 435, 36 S. E. 2d 897; *Hayes* v. *Prudential Insurance Co.*, 114 W. Va. 323, 171 S. E. 824. In the *Shank* case the holding of this Court was that an insured, who voluntarily paid insurance premiums during the period of his total disability, under a life insurance policy which provided for the waiver of payment of such premiums, upon receipt by the insurer at its home office of due proof of the total disability of the insured within the time designated in the policy, but who failed to furnish such proof within the stipulated period, cannot afterwards recover from the insurer the premiums paid to it by him. In the *Hayes* case this Court held that when a disability clause of a life insurance policy provides that the first monthly payment of benefits shall be made immediately upon receipt by the insurance company of due proof of disability, the furnishing of such proof is a condition precedent to the liability of the insurer to pay the disability benefits under the policy and that the insured can not recover such benefits prior to the time of the furnishing of such proof. The principle recognized and applied in those cases is applicable in this case and required the plaintiff to furnish due proof of his disability to the defendant within a reasonable time as a condition precedent to his right to recover disability benefits and the insurance premiums paid by him during the period of his disability. Not having satisfied that requirement of the policy, the plaintiff can not recover the premiums paid by him or the disability benefits to which he would have been entitled if he had furnished due proof of his total and permanent disability as provided by the policy during that period of his disability which extended from January 13, 1928, to September 21, 1939.

No liability of the defendant having been established by the plaintiff in this action upon his claim for the repayment to him of the premiums paid by him, or for the payment to him of disability benefits, during that portion of his disability which occurred prior to September 21, 1939, the judgment of the Circuit Court of Monongalia County is reversed, the verdict is set aside, and this case is remanded to that court for a new trial which is awarded the defendant by this Court.

*Judgment reversed; verdict
set aside; new trial awarded.*