EVA E. DAVIS

*v.*

COMBINED INSURANCE COMPANY OF AMERICA

(No. 10450)

*and*

GLENN DAVIS

*v.*

COMBINED INSURANCE COMPANY OF AMERICA

(No. 10451)

Submitted April 15, 1952. Decided May 27, 1952.

Fox, JUDGE, not participating.

*Sanders & Smoot,* for plaintiff in error.

*Kwass & Stone,* for defendants in error.

HAYMOND, JUDGE:

By these writs of error the action of the Circuit Court of Mercer County is challenged as erroneous in entering

a judgment for $600 in favor of the plaintiff upon a policy of accident insurance in each of two separate proceedings of notice of motion for judgment against the insurer. One of the proceedings was instituted by Eva E. Davis, the beneficiary in one of the policies, as plaintiff, against Combined Insurance Company of America, a corporation, as defendant, and the other was instituted by Glenn Davis, the beneficiary in the other policy, as plaintiff, against the same defendant. The defendant entered its demurrer to the evidence introduced by the plaintiff in each proceeding. Upon the demurrer the jury rendered a conditional verdict for each plaintiff for $600. The circuit court overruled the demurrer and on August 27, 1951, rendered the judgment in favor of each plaintiff of which the defendant complains. To each judgment this Court granted a writ of error upon the petition of the defendant. The proceedings were consolidated in the trial court and, as the questions presented in each are identical, these cases, by agreement of counsel and by leave of this Court, were argued and submitted together and are dealt with in one opinion.

On June 15, 1948, the defendant, Combined Insurance Company of America, issued an accident insurance policy to Curtis B. Davis with certain designated coverage for the loss of life, limb, limbs, sight or time caused by accidental means in favor of the plaintiff Eva E. Davis, as beneficiary; and on June 2, 1949, it issued a similar policy to Earl McKinley Davis in favor of the plaintiff Glenn Davis as beneficiary. On the back or the cover of each policy it is designated as a Six Dollar Semi-Annual Accident Policy and beneath that designation this statement appears "This Policy Provides Indemnity for Loss of Life, Limb, Limbs, Sight or Time Caused by Accidental Means, only to the extent herein limited and provided." Each policy requires the payment of a premium of $6 for six months from date of issue and in Section B contains, among other provisions, this provision upon which each plaintiff relies:

"If Such Injuries shall be sustained by the Insured, and shall within ninety days from the date of the accident

causing Such Injuries be the sole cause of loss of life by the Insured, and provided Such Injuries to the Insured shall occur:

"By being STRUCK OR KNOCKED DOWN OR RUN OVER, while walking or standing on a public highway, by any moving vehicle; * * * the Company will pay the sum of $600.00."

On September 4, 1950, the insureds in the policies, Curtis B. Davis and Earl McKinley Davis, sons of the plaintiffs, while present with a motorcycle on a public highway in or near the suburbs of the City of Bluefield, in Mercer County, West Virginia, were struck and instantly killed by a moving truck which collided with the motorcycle.

The beneficiary in each policy, contending that the death of the insured was covered by the policy, made demand upon the insurer for payment. The insurer, insisting that the death of the insured was not covered by the policy, denied the claim of each beneficiary. The beneficiaries, as plaintiffs, then instituted these separate proceedings against the defendant to recover the proceeds of the policies.

Upon the trial of each proceeding it was stipulated by the attorneys representing the respective parties that the sole cause of the deaths of the insureds, Curtis B. Davis and Earl McKinley Davis, on September 4, 1950, was that each was crushed by a Chevrolet panel truck driven by Charlie Hurt on U. S. Route 52 in Mercer County, West Virginia, on September 4, 1950; that the site of the accident was a public highway; that the premiums prescribed by the policies on which the proceedings were based were fully paid; and that the policies were in full force and effect at the time of the death of each insured.

The evidence concerning the manner of the occurrence of the accident which resulted in the deaths of the insureds consisted of the testimony of the only available eye witness who was produced in behalf of the plaintiffs in the consolidated cases. This witness testified in substance that shortly before the accident he was driving a

truck on U. S. Route 52 in a southerly direction toward the City of Bluefield; that he noticed two boys in front of him traveling on the highway in the same direction on a motorcycle at a speed of thirty five or forty miles per hour; that he did not then know either of the boys but learned after their deaths that they were Curtis B. Davis and Earl McKinley Davis; that he followed them for some time, at a distance of 90 to 100 feet from them, and until the accident occurred; that shortly before the accident he observed a panel truck about 1500 or 2000 feet in front of him traveling north and approaching the motorcycle; that the panel truck was swerving from one side of the road to the other; that he realized that there was going to be a wreck; that the witness brought his truck to a complete stop "off the road" to his right; that the boys on the motorcycle also "pulled off the road" to their right; that the truck crossed the road to the same side which was to its left, struck the bank of the road on that side, and "turned over on them".

With respect to the acts and the conduct of the boys at the time they were struck by the truck the witness, on his examination in chief, made these material statements:

"Q. Did you at any time before the accident bring your car to a halt? A. Yes, sir. Q. Could you explain to the jury just what caused you to do that? A. I seen a panel truck coming down over the hill swerving from one side of the road to the other, and I seen there was going to be a wreck or something and I stopped my truck in the dog kennel driveway, and these boys pulled off to one side and stopped and then got one foot on the ground, and this truck came in front of them and hit the bank and turned over on them, the best I could see. * * *. Q. Did you pull off the road first or did the boys pull off? A. I pulled off first. Q. How long after that was it that the boys on the motorcycle pulled off? A. They started pulling off maybe at the same time I did or got off just a few minutes after I did. Q. Had you brought your car to a complete stop? A. Yes, sir. Q. When they pulled off, where did they pull to—on their right or left? A. Off

on the right. Q. On the west side going toward Bluefield? A. Yes. Q. I believe you say they came to a halt? A. I don't know. I think they did. They might have or may not. They had their feet on the ground. Q. You say they had their feet on the ground? A. I could see one of their feet. Q. Do you know whether it was the one on the back or the one on the front? A. It was the one on the front. Q. By saying that you don't know whether they came to a halt or not, how far away from them were you? A. I was probably ninety feet, maybe a hundred feet. I wouldn't say for sure. Q. And on the same side of the road? A. Yes, sir. Q. Could you see from that distance whether the motorcycle was continuing on up the road? A. Well, it couldn't have went very far after they pulled off the highway for it was so quick when the truck hit them you couldn't tell whether they was moving or wasn't moving. * * *."

On cross-examination the same witness gave this testimony:

"Q. Mr. Hager, I believe after that accident occurred you discussed the matter with Corporal Walter Hampton, a member of the Department of Public Safety, and gave him a report on that? A. Yes, sir. Q. And then I believe you also testified before the Grand Jury? A. Yes, sir. * * *. Q. In testifying before the Grand Jury, didn't you testify Mr. Hager, that the motorcycle was slowing down at the time of the collision? A. Well, it was slowing down. I don't know whether it ever came to a stop for sure, just like I told you. Q. But it was your opinion that it was slowing down at the time the accident occurred? A. Yes, they had done got off the highway. Q. And that's what you told Corporal Hampton, that it was slowing down? A. Yes. Q. And that's your best opinion at the time that it was slowing down at the time the accident occurred? A. And practically stopped. He was as nigh stopped as he could ever get. Q. I believe you said here several times that you didn't know whether he came to a stop or not? A. No, I wouldn't say for sure. Things like that is hard to see. Q. Now, the boy in front, his right foot— A. Was

on the ground. Q. ---Was dragging along the ground; is that right? A. Yes, sir. Q. That's right, isn't it, his foot was dragging along the ground? A. It wasn't dragging. A man on a motorcycle has to put his foot on the ground to get it stopped. Q. But you don't know whether the motorcycle had come to a stop? A. No. Q. Then if it hadn't come to a stop and his foot was touching the ground, it would have had to be dragging? A. I don't say it was dragging. Any man riding a motorcycle has to put his foot on the ground to get it to come to a stop. Q. The boy in front, the driver, had both hands on the handle-bars at the time of the collision? A. Yes. Q. He was sitting in the front seat of the motorcycle? A. Yes. Q. You didn't see where his left foot was? A. No, sir. Q. Then the boy who was on the back was sitting in the seat on the back? A. Yes, sir. Q. Both of his feet were up? A. Yes, sir. Q. Neither of his feet were touching the highway; is that right? A. That's right."

The principal question for decision is whether, under the foregoing evidence, the insureds, at the time they were struck by a moving truck and sustained the injuries which caused their deaths were "walking or standing on a public highway" within the meaning of the policy of insurance.

Upon a demurrer by the defendant to the evidence introduced by the plaintiff, the demurrant necessarily admits not only the credibility of the evidence demurred to but all inferences of fact that may be fairly deduced from it and, in determining the facts which may be inferred from the evidence, the inference most favorable to the demurree will be made in instances where there is grave doubt which of two or more inferences shall be drawn. *Heard* v. *Chesapeake and Ohio Railway Company*, 26 W. Va. 455; *Nichols* v. *Camden Interstate Railway Company*, 62 W. Va. 409, 59 S. E. 968; *Bulkley* v. *Sims*, 48 W. Va. 104, 35 S. E. 971; *Fowler* v. *Baltimore and Ohio Railroad Company*, 18 W. Va. 579; *Muhleman* v. *National Insurance Company*, 6 W. Va. 508. The evidence, upon a demurrer to the evidence, should be interpreted "most benignly"

in favor of the demurree, in order that he may have all the benefit which might result from a verdict of a jury from which the case has been withdrawn by the demurrant. *Calloway* v. *Federal Life and Casualty Company,* 113 W. Va. 339, 167 S. E. 877; *Conner* v. *Jarrett,* 120 W. Va. 633, 200 S. E. 39; *Truschel* v. *The Rex Amusement Company,* 102 W. Va. 215, 136 S. E. 30; *Garrett* v. *Ramsey,* 26 W. Va. 345.

If the evidence demurred to is such that the court should not set aside the verdict of a jury in favor of the demurree, the court, upon a demurrer to such evidence, should give judgment against the demurrant. *Heard* v. *Chesapeake and Ohio Railway Company,* 26 W. Va. 455; *Nichols* v. *Camden Interstate Railway Company,* 62 W. Va. 409, 59 S. E. 968; *Mannon* v. *Camden Interstate Railway Company,* 56 W. Va. 554, 49 S. E. 450. The judgment of the trial court overruling a demurrer to the evidence will be affirmed unless it is contrary to the plain preponderance of the evidence or it is without evidence to support it as to some material question at issue. *Nichols* v. *Camden Interstate Railway Company,* 62 W. Va. 409, 59 S. E. 968; *Mannon* v. *Camden Interstate Railway Company,* 56 W. Va. 554, 49 S. E. 450.

When the evidence consists of that introduced by both the plaintiff and the defendant, upon a demurrer to the evidence, all the evidence introduced at the trial should be considered by the court and all reasonable inferences from it should be considered in favor of the demurree and judgment should be rendered in his favor, unless the evidence of the demurrant in conflict with the evidence of the demurree plainly and decidedly preponderates in favor of the demurrant on some decisive point, in which case the demurrer should be sustained and judgment should be rendered for the demurrant. *McGraw* v. *Hash,* 132 W. Va. 127, 51 S. E. 2d 774; *Niland* v. *Monongahela West Penn Public Service Company,* 125 W. Va. 231, 24 S. E. 2d 83; *West Virginia Pulp and Paper Company* v. *J. Natwick and Company,* 123 W. Va. 753, 21 S. E. 2d 368; *Conner* v. *Jarrett,* 120 W. Va. 633, 200 S. E. 39.

Upon a demurrer to the evidence, however, the demurrant admits only such inferences of fact as may be fairly deduced from the evidence and only such facts as are fairly deducible, *Talbott* v. *West Virginia C and P Railway Company*, 42 W. Va. 560, 26 S. E. 311; *Mapel* v. *John*, 42 W. Va. 30, 24 S. E. 608, 32 L. R. A. 800; and when, upon a demurrer to the evidence interposed by the defendant, the evidence is insufficient to support a verdict for the plaintiff, the court should sustain the demurrer and render judgment in favor of the demurrant. *Talbott* v. *West Virginia C and P Railway Company*, 42 W. Va. 560, 26 S. E. 311.

Under the foregoing principles, in so far as they apply to the evidence in the instant proceedings, it is clear that it can not be fairly inferred that either of the insureds was fatally injured, by the moving truck which struck and killed them, while walking or standing on a public highway within the applicable provision of each insurance policy. Manifestly neither insured was walking on the highway when he was struck. According to the undisputed evidence the insured who had been riding on the rear seat of the motorcycle and whose identity as between the two is not established, was sitting on the rear seat, both of his feet "were up", and neither foot was touching the highway. As to him no fact and no inference of fact can be fairly deduced from the evidence which shows that he was standing on the highway at the time of his fatal injury. The same comment applies to the insured at the front of the motorcycle. Whether the motorcycle was moving or had stopped at the time the truck struck it can not be determined with certainty from the evidence.

The testimony in chief of the only witness who saw the collision was that the motorcycle had stopped, but on cross-examination his statement was that it was "slowing down" and that he could not be sure that it "came to a stop" at the time of the accident. Of course, if the motorcycle was in motion and the insureds were on it, neither of them at that time could have been walking or standing on the highway, and no inference that either was then so walking or standing could be fairly deduced from

evidence which tended to show that the motorcycle was moving. If, however, it had stopped, and, at the time of the accident, the insured in front was sitting on the front seat with both his hands on the handlebars and his right foot on the ground or touching or dragging on the highway, and the insured in the rear was sitting on the rear seat with both feet above the highway, as the witness testified on cross-examination, no inference that either insured was then walking or standing on the highway could be fairly deduced from those statements of the witness. He says the insureds were sitting, and nowhere in his testimony does he say that they were standing, or even mention or use that word. A person can and frequently does sit on a chair or a table with one or both feet on or touching a floor. While in that position, however, the person is sitting, not walking or standing. The usual meaning of the verb "stand" is stated in Webster's New International Dictionary, Second Edition, unabridged, G and C Merriam Company, 1940, at page 2454, in this language "To take, or be at rest in, an upright or firm position as; a To support oneself on the feet in an erect or nearly erect position;—opposed to *lie, sit, kneel,* etc." It is difficult to imagine, and unreasonable to infer, that a person who is sitting is at the same time standing within the ordinary meaning of that word.

The burden was upon the plaintiff in each proceeding to prove that the insured in each policy was fatally injured, by a moving vehicle, while he was walking or standing on a public highway, and that the insured so injured was the insured covered by the particular policy upon which each plaintiff seeks to recover. Even if it could be fairly inferred from the evidence that the boy occupying the front seat of the motorcycle, when injured by the moving truck, was standing on the highway, the evidence utterly fails to identify him specifically as Curtis B. Davis or as Earl McKinley Davis or to show whether he was the designated insured in the policy issued to Curtis B. Davis or whether he was the designated insured in the policy issued to Earl McKinley Davis. Of course

he was either Curtis B. Davis or Earl McKinley Davis but which one of the two he was can not be determined from the evidence. As neither the boy in the front seat nor the boy in the rear seat can be positively identified as the named insured in either policy, and the boy in the rear seat was manifestly not walking or standing on the highway when he was fatally injured, there can be no recovery on either policy, under the evidence, even if the unidentified boy on the front seat, whose right foot was on the ground or touching or dragging on the highway when he sustained the injury which caused his death, could be deemed to have been standing at that time. The evidence being wholly insufficient to support a verdict in favor of the plaintiff in either proceeding, the circuit court should have sustained the demurrer of the defendant to the evidence and rendered judgment in its favor in each proceeding.

The contention of the plaintiffs that the policy in each proceeding, being a contract of insurance, should be construed liberally in favor of the insured and strictly against the insurer, and that such construction of its pertinent provision would, under the evidence, bring the insured within the coverage provided by each policy, is not well founded. The cardinal rule that contracts of insurance should be construed most strongly against the insurer and liberally in favor of the insured, is elementary and is firmly established in the law of insurance. *Pearson* v. *Supreme Liberty Life Insurance Company,* 116 W. Va. 147, 178 S. E. 814; *Life and Casualty Insurance Company of Tennessee* v. *Greenlee,* 187 Miss. 143, 192 So. 340. This salutary principle, however, does not apply when the language of the policy of insurance is unequivocal and unambiguous and is sufficiently clear in expressing the intention of the parties, or when the language has acquired by judicial construction a clear and definite meaning. *Frederick Hotel Company* v. *National Surety Company,* 113 W. Va. 609, 169 S. E. 327; *LaPorte* v. *North American Accident Insurance Company,* 161 La. 933, 109 So. 767, 48 A. L. R. 1086.

The pertinent provision of the policies here in suit is clear and free from ambiguity. When the language of a written instrument is plain and unambiguous, as here, there is no occasion or justification for its interpretation by the court. "Where the terms of a writing are plain and unambiguous there is no room for construction, since the only office of judicial construction is to remove doubt and uncertainty." 12 Am. Jur., Contracts, Paragraph 229; *Kanawha Banking and Trust Company* v. *Gilbert,* 131 W. Va. 88, 46 S. E. 2d 225. "The function of judicial construction of a written instrument is confined to the realm of ambiguity and there is no occasion for its exercise outside the limits of that sphere of inquiry." *Kanawha Banking and Trust Company* v. *Gilbert,* 131 W. Va. 88, 46 S. E. 2d 225. See also *Hamilton* v. *Rathbone,* 175 U. S. 414, 20 S. Ct. 155, 44 L. ed. 219; *Country Club of Portsmouth* v. *Wilkins,* 166 Va. 325, 186 S. E. 23. Clear and unambiguous provisions of a policy of insurance, as those of any other contract, will be given the plain meaning and effect of the language used by the parties to the contract. *Hanford* v. *Metropolitan Life Insurance Company,* 131 W. Va. 227, 46 S. E. 2d 777; *Adkins* v. *Aetna Life Insurance Company,* 130 W. Va. 362, 43 S. E. 2d 372; *Shank* v. *Jefferson Standard Life Insurance Company,* 128 W. Va. 435, 36 S. E. 2d 897; *Jenkins* v. *New York Life Insurance Company,* 122 W. Va. 73, 7 S. E. 2d 343; *Haddad* v. *John Hancock Mutual Life Insurance Company,* 117 W. Va. 749, 188 S. E. 131; *Hayes* v. *Prudential Insurance Company,* 114 W. Va. 323, 171 S. E. 824; *DaCorte* v. *New York Life Insurance Company,* 114 W. Va. 172, 171 S. E. 248; *Iannarelli* v. *Kansas City Life Insurance Company,* 114 W. Va. 88, 171 S. E. 748.

Though an insurance policy of the type here involved and the scope of the coverage provided by the clause relied on by the plaintiff in each proceeding have not been presented to or passed upon in any prior decision of this Court, those matters have been considered by the courts of last resort in other jurisdictions. *Merritt* v. *Great Northern Life Insurance Company of Milwaukee,* 236

Wis. 1, 294 N. W. 26, 130 A. L. R. 1151; *Life and Casualty Insurance Company* v. *Greenlee,* 187 Miss. 143, 192 So. 340; *Smith* v. *Life and Casualty Insurance Company,* 185 Ga. 572, 196 S. E. 59; *National Casualty Company* v. *Zmijewski,* 143 Fla. 285, 196 So. 587; *North American Accident Insurance Company* v. *White,* 258 Ky. 513, 80 S. W. 2d 577; *Sanderlin* v. *Life and Casualty Insurance Company,* 214 N. C. 362, 199 S. E. 275; *LaPorte* v. *North American Accident Insurance Company,* 161 La. 933, 109 So. 767, 48 A. L. R. 1086.

In *Merritt* v. *Great Northern Life Insurance Company of Milwaukee,* 236 Wis. 1, 294 N. W. 26, 130 A. L. R. 1151, it was held, by a divided court, that an insured who was injured by a passing truck while he was standing on the running board of his stationary automobile and removing sleet from its windshield, was within the coverage of an insurance policy which provided indemnity for an injury caused by being struck, knocked down, or run over while standing or walking in or on an open public street or highway by any automotive or animal drawn vehicle. In reaching its decision in that case the court gave much weight to a statement in large type on the back of the policy in these terms: "This policy is particularly designed to cover travel accidents and does so in almost any conveyance which you may use for your transportation, whether riding in an automobile, railroad train, steamboat, street car, taxicab or bus. The policy goes further than that and, within the limits of your policy, agrees to pay for your injuries in consequence of your being struck, run down or run over by an automobile on the public streets or highways." Because of the broad interpretation placed upon the coverage of the policy by the insurer by the above quoted statement and the standing position of the insured when injured, the holding in the *Merritt* case, cited and relied on by the plaintiffs, is readily distinguishable from the facts disclosed in the instant proceedings.

In *Life and Casualty Insurance Company* v. *Greenlee,* 187 Miss. 143, 192 So. 340, the court held that a policy,

providing indemnity for death if the insured should be struck, knocked down, or run over by a motor vehicle while walking or standing on a public highway, covered the insured who, while standing on the highway with one foot on it and the other raised in an effort to mount a slowly moving truck was struck by a part of the truck, knocked down, run over and fatally injured. In *Smith* v. *Life and Casualty Insurance Company,* 185 Ga. 572, 196 S. E. 59, a policy providing benefits if the insured should be struck while walking or standing upon a public highway by a vehicle propelled by gasoline was held to cover an insured who was struck and killed by a motor vehicle after he ran across the road, waited for a slowing truck to stop, ran in front of it, and then, though not struck by the truck, fell under the rear wheel in an attempt to mount the truck. In its opinion on motion for rehearing the court said "While the witness did not testify in terms that the insured had his feet on the ground, this may be inferred from a consideration of the entire testimony." In *National Casualty Company* v. *Zmijewski,* 143 Fla. 285, 196 So. 587, a recovery in favor of the beneficiary in a policy which provided indemnity against the death of the insured through external, violent and accidental means while walking or standing upon a public highway by a moving vehicle propelled by gasoline was sustained upon evidence that at the time the insured was struck by a moving vehicle he was standing on or near the dividing line of a public highway at a place not exceeding two feet from private property which had been used by motorists and the general public for more than ten years as a filling station. The court entertained the view that it could fairly be inferred from the evidence that the insured, when injured, was on a public highway within the meaning of the policy and at that time he was in fact standing at the place where he was injured. The evidence in the three cases just referred to, which are also cited and relied upon by the plaintiffs, showed beyond question that the insured in each was actually standing at or immediately before the time he was injured and for that

reason the holdings in these cases do not apply to the facts in the instant proceedings.

In *North American Accident Insurance Company* v. *White,* 258 Ky. 513, 80 S. W. 2d 577, the insurance policy sued on provided indemnity for loss of life if the insured was struck, knocked down, or run over while walking or standing on a public highway by a moving vehicle propelled by gasoline or other designated power. While riding a bicycle on a public highway the insured, when near an automobile approaching from an opposite direction, jumped from the bicycle. In the act of jumping he passed over the fender of the automobile, his left side struck the running board, his feet went into the air, and he fell in the road. In this manner the insured sustained an injury which, with pneumonia superinduced by the injury, resulted in his death. The court held that the insured was neither walking nor standing in or on the highway within the meaning of the policy at the time he was injured and that the beneficiary was not entitled to recover. In the opinion the court said:

"The parties to the insurance contract had the right and power to contract for what accidents and risks the insurer was, and for what accidents and risks it was not, liable, and the court under the guise of construction may not make a new or different contract for them. *Inter-Southern Life Ins. Co.* v. *Foster,* 248 Ky. 481, 58 S. W. (2d) 668; *Walther* v. *Southern Surety Co.,* 187 Ky. 466, 219 S. W. 183; *Benham* v. *Ky. Central Life & Acc. Ins. Co.,* 240 Ky. 169, 38 S. W. (2d) 954; *Monroe's Adm'r* v. *Federal Union Life Ins. Co.,* 251 Ky. 570, 65 S. W. (2d) 680.

"The words of the clause of the policy here involved are so plain and simple, no rules of construction need be invoked to understand their natural, obvious meaning.

"It is an accepted rule that where the policy covers an injury or death sustained in a particular manner, the accident causing either must be within the stipulations as set forth therein, and the burden is on the beneficiary to establish accordingly, by some evidence, his right to

recover. 'Especially should this be so where the premium is small * * * and the policy is a very limited one and does not pretend to be full coverage. As an actuarial proposition, the insurance must necessarily be circumscribed and must have been so understood by the person insured.' *Inter-Southern Life Ins. Co.* v. *Foster, supra; Walther* v. *Southern Surety Co., supra.*"

In *Sanderlin* v. *Life and Casualty Insurance Company*, 214 N. C. 362, 199 S. E. 275, an insurance policy providing coverage for loss of life if an insured, while walking or standing on a public highway, was struck by actually coming in physical contact with a vehicle propelled by gasoline or other designated power, or if loss of life of an insured was caused by collision of, or by accident to, any private motor driven automobile inside of which he was riding or driving, an insured who fell or was thrown from an automobile traveling upon a public highway at a high rate of speed, in which he was riding, and was fatally injured was held not to be within the coverage provided by the policy and a recovery by the beneficiary was denied. In the opinion the court used this language:

"The injury was not within the terms of the policy. It did not occur by his being struck by an automobile while he was walking or standing on the highway, nor was it occasioned by collision of the automobile in which he was riding, nor by an accident to the automobile. We can only construe the contract as the parties have made it. *Whitaker* v. *Ins. Co.*, 213 N. C. 376, 196 S. E. 328; *Taft* v. *Casualty Co.*, 211 N. C. 507, 191 S. E. 10; *Gilmore* v. *Ins. Co.*, 199 N. C. 632, 155 S. E. 566; 14 R. C. L. 931."

In *LaPorte* v. *North American Accident Insurance Company*, 161 La. 933, 109 So. 767, 48 A. L. R. 1086, the court held that an insured who was thrown from a motorcycle, knocked down, run over and killed by an automobile was not within the protection of a policy which provided indemnity if the insured was struck, knocked down, or run over, by a vehicle propelled by gasoline or other designated power while walking or standing on a public highway.

The conclusion reached in the instant proceedings, that at the time each insured was fatally injured he was not walking or standing on a public highway within the meaning of the policy sued on, is in accord with the holdings in the three last cited cases and is supported by those decisions.

Each of the policies here involved contains a clause which provides indemnity in the sum of $600 in the event the insured is fatally injured while actually driving or riding in any automobile, bus, taxicab, or truck. The inclusion of this clause and of the previously quoted clause relied on by the plaintiff, indicates clearly that it was the intention of the parties to the contract of insurance that one of these clauses should cover an insured who, when fatally injured, was driving or riding in any of the designated vehicles which, by their sides or enclosed bodies, furnish some degree of protection to the person inside any of them against other vehicles engaged in traffic, and that the other should cover an insured who, when fatally injured, was a pedestrian on a public highway. It is equally clear, however, that it was not the intention of the parties that either clause should cover an insured who, being exposed to the obviously increased hazard of injury in operating or in riding an entirely unprotected means of conveyance such as a motorcycle or a bicycle, should sustain a fatal injury by being struck by a moving vehicle while using, or riding, or sitting on a motorcycle or a bicycle on a public highway. The parties having specified and limited the extent of the protection afforded by the contract of insurance, courts may not, by construing, changing or remaking such contract, extend its coverage beyond the limits fixed by the parties themselves.

The judgment of the circuit court in each proceeding, being erroneous, is reversed, and the demurrer of the defendant is sustained and judgment in its favor is rendered by this Court in each proceeding.

*Reversed and rendered.*